2004-NMCA-034

86 P.3d 623

**Kenneth L. WEDDINGTON,
Petitioner–Appellee,**

v.

**Anna N. WEDDINGTON, Respondent–
Appellant.**

**No. 23,800.**

Court of Appeals of New Mexico.

Jan. 22, 2004.

As Revised April 16, 2004.

Thomas C. Bird, Elizabeth E. Whitefield, Keleher & McLeod, P.A., Albuquerque, NM, for Appellee.

Jody Neal–Post, Albuquerque, NM, for Appellant.

## OPINION

SUTIN, Judge.

{1} In this domestic relations feud, Anna Weddington (Mother) appeals from an order determining the amount to be deposited into a college fund account and awarding Kenneth Weddington (Father) a portion of his attorney fees and costs. Mother contends that the district court did not have jurisdiction to make any determination regarding the college fund account and, even if it did, it erred in interpreting and reforming the plain language in the marital settlement agreement regarding the account. She also contends that the district court abused its discretion in awarding Father a portion of his attorney fees and costs as a sanction against her for the motions she filed leading up to the order from which she appeals. We affirm.

## BACKGROUND

{2} Mother and Father were married in 1983. In 1998 Father filed a petition for divorce. The parties have three children. In their marital settlement agreement (the agreement), the parties agreed to a division of their community property and debts, and agreed on their separate property, child support, a parenting plan for the children, and spousal support. The parties agreed that child support would be reviewed and re-set in 2003, but until that time it would "not be modified unless there [was] a substantial

change in the time-sharing arrangement." In addition, the agreement stated:

> This agreement regarding the non-modifiability of child support was reached by the parties who considered it an integral portion of the overall settlement and with the knowledge that either or both parties may earn or receive more or less money than shown on the Child Support Worksheets during the period of non-modifiability.

There was also a provision for the modification of child support upon the emancipation of each child.

{3} The parties agreed to the division of Father's Voluntary Separation Incentive (VSI) payments from the military. The amounts that Mother received from the VSI payments were designated as spousal support. In 2000 Mother would receive a lump sum payment of $5,000. In 2001 she would again receive a lump sum payment of $5,000. In 2002 Mother would receive $3,500 in a lump sum payment. Father was awarded the remainder of the VSI payments in 2000–2002 as his separate property. Beginning in 2003, until VSI payments ceased in 2020, Mother would receive $3,500 annually in a lump sum payment as spousal support and "[t]he remainder of the VSI payment [would] go into a custodial college fund account which [would] be established in the name of [Father] and the parties' children." The parties agreed that the account would be used to pay expenses for the children's college education.

{4} The agreement was made a part of the court's final order of divorce in June 1999. In February 2002, Mother filed a petition to enforce the agreement and to modify child support. Mother argued that the oldest child would soon graduate from high school and that the college account needed to be established. Further, Mother argued in her petition that because the oldest child was near emancipation, child support should be modified. Father moved to dismiss Mother's petition and responded that there was no provision for funding the college account until 2003 and that there was to be no change in child support until 2003. Mother responded to Father's motion to dismiss and asserted that Father was using the college account to control where the oldest child would attend college. She asserted she did not want the account funded, but wanted only the details of the account to be established. Further, she contended that Father had had a substantial increase in his salary and that the original child support negotiations had been made in bad faith. Finally, she asserted Father was not taking responsibility for one-half of the children's expenses. Mother also filed a motion for a restraining order or alternatively for physical custody of the children. She claimed Father was upsetting and intimidating the children.

{5} Father filed a reply to Mother's reply to his motion to dismiss in which he pointed out that when the college account was funded, it would receive between $4,000 and $7,000, depending on taxes. He asserted Mother was encouraging the oldest child to apply to a college whose expenses far exceeded the funds being put into the account. He pointed out there were two other children entitled to receive monies from the account in the future. He also pointed out that the parties agreed to the child support arrangement knowing that his income might increase. Finally, he argued that Mother was attempting to modify child support in bad faith and renewed his motion to dismiss Mother's petition. He also sought an award of attorney fees and costs.

{6} The district court conducted a hearing on Mother's petition to enforce the agreement and to modify child support. Father argued his motion to dismiss on the basis that the agreement was explicit about the funding of the college account and that there was to be no modification to child support until 2003. The court determined that it did not have jurisdiction to change the parties' agreement and granted Father's motion to dismiss with regard to the college account. The court also denied the motion to change the custody arrangements.

{7} In the hearing, the district court stated that, although child support could be modified, in a case such as this, where the parties agreed not to modify child support for a particular period of time, the court would give that fact great weight. At the same time, however, the court decided that the parties should exchange financial information

and that a ruling on modification of child support would be reserved pending that exchange. The court wanted the parties to see what effect the exchanged information would have on the child support. The court stated that Mother should decide whether or not to proceed based on what the information revealed. If she did not request a hearing on the child support modification within thirty days, modification would be denied. Thirty days later, Mother requested a hearing on her motion to modify child support.

{8} At the hearing on Mother's motion to modify child support, Mother was prepared to present evidence that Father was not living up to the parties' agreement to a 50/50 time share. The district court determined, however, that what Mother intended to show was not a substantial material change of circumstances and that Mother would have to show the court "why it is totally inequitable for the parties to follow the agreement." Mother then acknowledged that Father met his 50/50 time share responsibility, but proceeded to argue that Father was not carrying his share of expenses and responsibilities for the children. There was a great deal of discussion about providing food and clothing and paying for other expenses on a 50/50 basis. The court suggested that the parties get together with their counsel and work the problems out because the court did not see a basis for modifying the child support. Thereafter, a stipulated order was entered, in which Mother dismissed her motion to modify child support with prejudice until February 1, 2003. Father's request for attorney fees and costs was reserved until the next hearing.

{9} Mother filed an objection with affidavits with regard to the amount of attorney fees and costs requested by Father on the basis that the fees were unreasonable. Further, she asserted that she was carrying the majority of the children's financial burden and that an award of attorney fees to Father would be detrimental to the children. Father responded that the fees requested were reasonable in light of the proceedings. Further, he pointed out that Mother's motions were all dismissed as inappropriately filed. At the hearing on Father's request for attorney fees and Mother's objection, the district court noted that the motions filed by Mother were in clear derogation of the parties' agreement. As a result, the court determined that it would assess fees against Mother.

{10} The court went on to express its concern with the dynamics between the parties and their children. The court noted that the parties were using money against one another and placing the children in the middle. The court decided to appoint a guardian ad litem for the children. The guardian was to meet with both parties and the children to look at budgets and help them see the realities of what they have to spend and what the children can realistically expect. The court determined that $2,000 would be a reasonable attorney fee and ordered Mother to pay it as Father's share of the initial guardian ad litem fee. The remainder of the hearing was taken with Mother expressing her unhappiness with the proceedings and her continuing view that Father was not sharing everything 50/50 and she was carrying the financial burden of the children. The court pointed out to Mother that she had an incorrect understanding of what 50/50 meant. The court expressed its hope that the guardian ad litem would be able to assist the parties in making financial decisions that were more realistic than those they had been making.

{11} The district court requested Father's counsel to draft the order reflecting the court's decision. A presentment hearing was required because Mother would not approve the order as drafted. Mother argued that she had a problem with the language regarding the taxation of the VSI. The court explained its intent regarding the taxes and the amount to be deposited in the college account. Mother then argued that they had never agreed that taxes would be paid from the VSI payments before the account was funded. The court recognized that there was nothing in the agreement about taxes, but the court interpreted the funding language to be the net remainder. The court stated that Father could not be required to deposit money that he did not have. In order to avoid more hearings on the issue, the district court

addressed it and decided to interpret the language as it made sense to the court.

{12} In its order, the court determined that "the amount of the VSI to be deposited into the College Account is the net amount, which is the VSI payment, less spousal support to be paid to Respondent, less any taxes associated directly on that amount." The court also awarded Father $2,000 in attorney fees. Finally, the court appointed a guardian ad litem for the children. Mother moved to reconsider the order with regard to the college account and the award of attorney fees. The district court did not rule on the motion and it was deemed denied by operation of law. Thereafter, other appealed.

## DISCUSSION

### The College Account Issue

#### Jurisdiction

{13} Mother argues that the district court did not have jurisdiction to make any ruling on the college account. She contends that issues regarding the college account were not before the court at the time that it made its ruling because the court had earlier dismissed Mother's motion to enforce the agreement and establish the college account. She further contends that, after that dismissal, nothing remained for the court to decide in connection with the college account. Mother argues that because there was no actual controversy before the court regarding the college account, the court's determination of what would be deposited into the account was simply an advisory opinion. A claim of lack of subject matter jurisdiction can be raised at any time. *Gonzales v. Surgidev Corp.*, 120 N.M. 133, 138, 899 P.2d 576, 581 (1995). This Court reviews subject matter jurisdiction de novo. *Ottino v. Ottino*, 2001–NMCA–012, ¶ 6, 130 N.M. 168, 21 P.3d 37.

{14} We disagree with Mother. NMSA 1978, § 40–4–7(C) (1997) states that "[t]he court may order and enforce the payment of support for the maintenance and education after high school of emancipated children of the marriage pursuant to a written agreement between the parties." The college account provisions concern the education of the children. The district court has the authority to construe an agreement re-

garding the care and education of minor children. *See* § 40–4–7(C); *Rhinehart v. Nowlin*, 111 N.M. 319, 323, 805 P.2d 88, 92 (Ct. App.1990) ("[T]rial courts are given exclusive jurisdiction of *all matters* relating to the guardianship, care, custody, maintenance and education of the children."). That the education in question is to be obtained after the children's emancipation makes no difference. *See Ottino*, 2001–NMCA–012, ¶ 5 n. 1, 130 N.M. 168, 21 P.3d 37 ("We are bound to apply the statute in effect at the time of the divorce, even though [Section 40–4–7] was amended in 1997 to allow district courts to order and enforce the payment of support for the maintenance and education after high school of emancipated children of the marriage pursuant to a written agreement of the parties." (internal quotation marks and citation omitted)).

{15} This case is not controlled by our interpretation of Section 40–4–7 in *Ottino*, upon which Mother relies. The statute has changed since the filing for the underlying divorce in *Ottino*, and the filing date of the divorce decree in that case controlled the Court's analysis and decision. 2001–NMCA–012, ¶ 5, 130 N.M. 168, 21 P.3d 37. Section 40–4–7(C) now allows the court to order and enforce payment for post-secondary education pursuant to a written agreement between the parties. This is a grant of post-minority support jurisdiction where there had previously been no such jurisdiction. *See Ottino*, 2001–NMCA–012, ¶ 26, 130 N.M. 168, 21 P.3d 37. We think the legislative intent behind Section 40–4–7(C) is that post-minority education agreements in marital settlements may now merge into the divorce decree and that the court has jurisdiction to enforce the agreements.

{16} Mother argues that the VSI payments were a property distribution and that a court does not have jurisdiction to modify a property division after the time for appeal has passed. *See Higginbotham v. Higginbotham*, 92 N.M. 412, 413, 589 P.2d 196, 197 (1979); *Mendoza v. Mendoza*, 103 N.M. 327, 332, 706 P.2d 869, 874 (Ct.App. 1985). We disagree with Mother's view of the nature of the agreement regarding the VSI payments. The specific placement of

funds into a college account for the three children was an agreement to provide post-minority education assistance, specifically falling under the provisions of Section 40–4–7(C). We think it is erroneous to characterize this aspect of the provision as a property distribution for the purpose of challenging the district court's authority to interpret the agreement.

{17} With emphasis as shown, Mother further argues that while "[Section] 40–4–7(C) allows the Court to *order and enforce* payment for post-secondary education *only pursuant to a written agreement between the parties,* ie, only pursuant to a contract," the 1997 amendment to Section 40–4–7(C) did not permit the district court "to modify that which the legislature has only granted it jurisdiction to enforce," or "enlarge the Court's jurisdiction to force parties to provide post-minority support without their consent." We see it differently. Once the parties have voluntarily agreed to provide for post-secondary education, there exists an agreement that the district court can interpret, if it is ambiguous, and also enforce. *See Schaefer v. Hinkle,* 93 N.M. 129, 131, 597 P.2d 314, 316 (1979) (stating that "[t]he function of the courts is to interpret and enforce a contract as made by the parties" and that if there is an ambiguity, the court must ascertain the intent of the parties). Enforcement of the parties' agreement regarding post-minority education is now governed by statute and the district court has jurisdiction to enforce the agreement after employing contract construction tools.

{18} In addition, Mother argues that the district court improperly gave an advisory opinion. We disagree. Advisory opinions are those that resolve a hypothetical situation that may or may not arise. *See Santa Fe S. Ry. v. Baucis Ltd. Liab. Co.,* 1998–NMCA–002, ¶ 24, 124 N.M. 430, 952 P.2d 31. This was not a hypothetical situation. The record showed clear disagreement concerning the meaning of the agreement provisions regarding the college account. The court's resolution of that disagreement cannot be deemed merely advisory.

**Interpretation of Language and Need for a Hearing**

{19} Mother argues that even if the court had jurisdiction to entertain relief regarding the college account, the court nevertheless erred in interpreting plain language in the agreement, and further, that the court should not have engaged in contract interpretation without notice and an evidentiary hearing. Mother asserts that the district court erroneously rewrote the contract by interpreting the language rather than applying the plain meaning of the contract language as written. Contract language reasonably and fairly susceptible to different construction can be deemed ambiguous and open to interpretation. *Schueller v. Schueller,* 117 N.M. 197, 199, 870 P.2d 159, 161 (Ct.App.1994). We review a district court's determination of ambiguity de novo. *Sitterly v. Matthews,* 2000–NMCA–037, ¶ 15, 129 N.M. 134, 2 P.3d 871. Once we agree with the district court that an ambiguity exists, if the court's interpretation is consistent with the language of the agreement read as a whole and is supported by the record, we review the court's resolution of the ambiguity for abuse of discretion. *See Thompson v. Rothman,* 791 A.2d 921, 923–24 (Me.2002).

{20} It is obvious from the record that the parties did not agree on the meaning of the language that "[t]he remainder of the VSI payment shall go into a custodial college fund account which shall be established in the name of [Father] and the parties' children." From the circumstances, the amount to be deposited in the college account is unclear. The agreement does not state a specific dollar amount but simply uses the word "remainder" after Mother is paid her lump sum spousal support. The district court recognized that there was substantial uncertainty regarding the amount of money to go into the college account and that that uncertainty was fueling the litigation between the parties. In order to resolve the conflicts that this uncertainty was engendering, the court decided to interpret the meaning of "remainder." We do not think it was error for the district court to determine that the college account provision was ambiguous.

{21} Nor do we think it was error for the court to interpret the provision. The court was not limited to the bare words of the document but could consider the context. *See Levenson v. Mobley,* 106 N.M. 399, 402, 744 P.2d 174, 177 (1987). Mother argues that tax consequences were included in other parts of the agreement, but not this section, evidencing a clear intent to exclude tax considerations from this section. However, the district court considered the term "remainder" in context of the entire agreement and determined that the only fair and sensible way to construe the term was as a net remainder, that is, the VSI payment less any income taxes that would be attributable to the amount. *See Thompson,* 791 A.2d at 924–25 (holding that a district court has discretion in interpreting a term in a divorce judgment when the interpretation is consistent with the document as a whole).

{22} Mother remains persistent on the ambiguity issue by arguing that the district court determined that the agreement was clear when it declined to modify the college account agreement, and the court should not have reformed the agreement and added material terms to it. Just because the court found the agreement clear regarding the fact that child support could not be modified until 2003 and that the college account would not be funded until 2003 does not mean that it could not find ambiguity regarding the meaning of the term "remainder" in the college account provision. We disagree that, because the district court dismissed Mother's motions on the basis that the agreement was clear on those issues, every term in the agreement was clear and unambiguous.

{23} In addition, Mother argues that there was no evidentiary hearing allowing her the opportunity to present evidence regarding the parties' negotiations and intentions. We reject this argument. It does not appear that Mother raised below the issue of not having a specific evidentiary hearing.[1] She could have objected after the court first announced its interpretation of the college account to be "the net amount left" after taxes at the October hearing, or during Mother's discourse with the court about the tax matter during the December hearing. Mother's attorney did not object to a lack of a specific evidentiary hearing at any time. Additionally, issues regarding the funding of the college account were raised in three out of the four hearings and Mother actually presented her own interpretation of the "remainder" language in one of those hearings. Father asserted that the "remainder" was minus taxes attributable to the VSI payment. In particular, the December hearing took place because Mother would not sign Father's proposed order from the October hearing because she "had a problem with the wording with regard to the taxing of [the] college fund." Mother's counsel knew they were going to the presentment hearing to dispute the college account tax issue and she could have been prepared to bring forth evidence at that time but was not. Mother's counsel also could have objected or requested an evidentiary hearing at that time but did not. Mother was allowed to argue her side. The record shows that there was argument on the issue and that the district court determined it would be unfair to interpret the "remainder" language as anything other than the VSI payment less taxes due on that payment. We cannot say that the district court reached a decision on the meaning of the term without allowing Mother a fair opportunity to present evidence and her view or without having considered Mother's view.

## Attorney Fees

{24} The district court found that Mother filed her motions "in the face of a very clear Marital Settlement Agreement determining what funds will be put into [a] college fund and when, as well as the fact that alimony or child support would not be modified until February of 2003." The court awarded Father $2,000 for fees incurred in defending those motions.

{25} Mother argues that the trial court erred in awarding attorney fees to Father as a sanction for her filing motions to modify child support and the college account. We review the district court's award of attorney fees for an abuse of discretion. *See Bustos v. Bustos,* 2000–NMCA–040, ¶ 24, 128 N.M. 842, 999 P.2d 1074. Mother appears to be arguing that the award of the fees as a

1. It should be noted that Mother's trial counsel was different than her appellate counsel.

sanction should be reversed because the district court made no finding that there was no arguable basis in law or fact to support Mother's claims. *See State ex rel. N.M. State Highway & Transp. Dep't v. Baca,* 120 N.M. 1, 8, 896 P.2d 1148, 1155 (1995) (requiring specific findings of misconduct to warrant an award of attorney fees as a sanction for bad faith or vexatious litigation). She argues that the court's own statements and decisions regarding the college account show that Mother's uncertainty regarding the account was not unreasonable and that the filing of her motion to enforce the agreement was not in bad faith or vexatious. Similarly, she argues that her motion to modify child support was brought in good faith as the agreement indicated that child support would be modified upon emancipation of each child.

{26} Mother's reliance on *Baca* is misplaced. *Baca* did not involve a statutory provision permitting the district court to award attorney fees. The parties were to bear their own attorney fees. The Supreme Court held, however, under certain circumstances attorney fees could be awarded as a sanction for bad faith or vexatious litigation. *See id.* Thus, in cases where attorney fees cannot normally be awarded, there must be a strong showing to support the award as a sanction. *See id.* That is not the case here because attorney fees can be awarded in domestic relations cases. *See* Rule 1–127 NMRA 2003; § 40–4–7(A); *N.M. Right to Choose/NARAL v. Johnson,* 1999–NMSC–028, ¶ 24, 127 N.M. 654, 986 P.2d 450 (recognizing, as allowable, attorney fees in divorce and child custody proceedings). Thus, *Baca* and other civil cases relied on by Mother are not persuasive here.

{27} In awarding attorney fees in domestic relations cases, the district court is to consider a number of factors including disparity of the parties' resources, prior settlement offers, the total amount of fees and costs expended by each party, and the success on the merits. Rule 1–127. Here, the court was presented with evidence of Father's attorney's attempts to show Mother that there was no basis for her motions. The court was also aware of the total amount of attorney time expended and fees incurred by both Father and Mother in this case. Finally, the court noted that it was clear from the agreement that the parties had agreed to fund the college account in 2003 and that child support would not be modified until 2003. Father succeeded in defending against Mother's motions. These factors support the award of attorney fees to Father.

{28} Mother argues that the court did not consider the disparity in the parties' resources. Although below Mother argued disparity in passing in her motion for reconsideration, it appears she did not present any evidence to show financial disparity. Further, the district court may have taken financial disparity into consideration when it refused to award Father his entire request and granted him only $2,000 of the more than $6,000 he asked for. Moreover, disparity is only one factor to be considered and disparity cannot support reversal where the other factors weigh in favor of the award of attorney fees. *See Gilmore v. Gilmore,* 106 N.M. 788, 792, 750 P.2d 1114, 1118 (Ct.App.1988) (holding that financial disparity is only one factor to be considered and, in considering other factors, denial of fees to party claiming disparity is not an abuse of discretion).

{29} We hold that the district court did not abuse its discretion in awarding Father $2,000 in attorney fees under the circumstances of this case.

**CONCLUSION**

{30} We affirm. The parties will bear their own costs on appeal.

{31} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD and MICHAEL D. BUSTAMANTE, Judges.