2004-NMCA-133

102 P.3d 651

**Holm O. BURSUM, IV, Petitioner–Appellee/Cross–Appellant,**

v.

**Kimberly S. BURSUM, Respondent–Appellant/Cross–Appellee.**

**No. 23,798.**

Court of Appeals of New Mexico.

Oct. 28, 2004.

Certiorari Denied, No. 29,077, March 9, 2005.

Paul J. Kennedy, Mary Y.C. Han, Kennedy & Han, P.C., Albuquerque, NM, for Appellee/Cross–Appellant.

David Henderson, Downing & Henderson, P.C., Santa Fe, NM, for Appellant/Cross–Appellee.

*OPINION*

PICKARD, Judge.

{1} Wife appeals the district court's order dissolving her marriage, dividing property, and awarding child support. Husband cross-appeals. The parties raise numerous arguments, most of which we address in a memorandum opinion accompanying this formal opinion. In this opinion, we address five issues, all related to attorney fees. Wife contends that the district court had jurisdiction to consider whether to award her attorney fees from the couple's California child custody case. While we agree, we hold that an award of her California attorney fees is not mandatory, and we further hold that any error in the district court's view of its jurisdiction can be viewed as harmless under the circumstances of this case. Wife also argues that the district court should have labeled all of her custody-related attorney fee debt as a community debt. We disagree, again under the circumstances of this case. Additionally, Wife argues that the district court should have ordered Husband to pay all of her New Mexico attorney fees, while on cross-appeal, Husband argues that he should have been permitted to take discovery on Wife's California attorney fees and that the district court should have credited him for his partial payment of Wife's attorney fees. We affirm the district court's decisions on these issues as well.

**FACTS AND PROCEEDINGS**

{2} Husband and Wife married in California in July 1991. In 1994, they moved to Arizona. In 1999, they relocated to Socorro, New Mexico, where Husband was raised and where his family owns a holding company that owns the First State Bank of Socorro. The relationship deteriorated, and in July 2000, Wife moved to her former home of California while seven months pregnant. Wife alleged that Husband had threatened her and her mother and that she had discovered that Husband had been secretly investing community assets into separately held accounts and ventures.

{3} Wife filed for legal separation in California in July 2000. Husband filed for dissolution of marriage in New Mexico about two weeks later. In September 2000, their child (Child) was born in California. Husband successfully moved to quash all proceedings in California except for the custody case because the California court did not have personal jurisdiction over him. Husband then filed for determination of custody in New Mexico.

{4} The California court entered an order making an initial determination of child custody jurisdiction in California, but allowing Husband to raise inconvenient forum grounds. The California court later granted Husband's motion to transfer the case to New Mexico on inconvenient forum grounds and ordered the establishment of a travel fund to facilitate Wife's participation in the litigation. Wife appealed to the California Court of Appeals.

{5} Based on its inconvenient forum decision, the California superior court transferred the case to New Mexico, where the New Mexico district court assumed jurisdiction in all matters and immediately awarded Wife interim child and spousal support. Then, in April 2001, the California Court of Appeals issued an opinion holding that California was the appropriate jurisdiction for the custody case and directing the California superior court to issue an order vacating the transfer of the case to New Mexico. From this point on, two separate cases proceeded, with child custody litigation occurring in California and litigation pertaining to the di-

vorce, property, and support occurring in New Mexico.

{6} The facts pertaining to attorney fees are as follows. Both parties requested attorney fees on multiple occasions. In June 2001, citing the need "to equalize the monies paid to the parties' New Mexico attorneys for attorney's fees and costs," the district court ordered Husband to pay $50,000 to Wife. In October 2001, the court ordered:

> Father[']s attorney fee loan and Mother[']s California attorney fees will need to be taken care of by liquidating assets. Short term (one or two months) this will be done with the Christmas Club Funds as the [court-appointed expert] directs, mid term shall be as determined by the Court at the next scheduled hearing. . . . [I]n the mid term sum will also need to be included funds for ongoing attorney fees and expert witness fees.

In November 2001, the court ordered monthly payments on Wife's California attorney fees to be made from a fund established to finance litigation-related travel, child visitation, and payment of taxes. It also ordered that money from that fund be used to pay the court-appointed expert. In October 2002, the district court decided that it would not consider California attorney fees as part of the New Mexico case. From the record, it appears that the district court did not use its sanctioning authority to award attorney fees at any time.

{7} The case was originally heard by Judge James Loughren, and when he stepped down from the bench, he continued to hear the case as a special master for Judge Nan Nash. In January 2003, the special master produced a report on attorney fees: The report found that New Mexico attorney fees totaled $173,000 for Husband and $115,600 for Wife. It listed California attorney fees as $150,369 for Husband and $134,700 for Wife, but stated that New Mexico did not have jurisdiction to consider the California attorney fees. The report labeled each party's attorney fee debt as separate debt, making no distinction between California and New Mexico fees.

{8} The report also reviewed the parties' actions over the course of litigation, conclud-

ing that "[n]either party so clearly prevailed, nor acted with clean hands such that either is entitled to extraordinary relief or sanctions as against the other." The special master found that Husband had paid Wife $34,902.39 pursuant to earlier orders requiring him to pay part of Wife's attorney fees and that because this was paid in an attempt to equalize fees, Husband was not entitled to reimbursement or credit for this amount. Finally, considering a series of factors discussed in more detail below, the special master recommended that "the parties should each bear their own remaining attorney fees and no further allocation of attorney fees between the parties than what took place during the case is warranted."

{9} After Husband and Wife litigated every aspect of property, support, and fees, the district court entered an order dissolving the marriage in December 2002. Following an additional two months of litigation over the final division of property, the district court adopted the special master's reports on property division and attorney fees. The present appeals followed.

## DISCUSSION

{10} There are three main sources for the district court's power to award attorney fees to a party in a divorce. First, the district court "may make an order, relative to the expenses of the proceeding, as will ensure either party an efficient preparation and presentation of his [or her] case." NMSA 1978, § 40–4–7(A) (1997). We have held that "[i]f there is economic disparity between the parties in a domestic relations case, such that one party may be inhibited from preparing or presenting a claim, then the trial and appellate courts should be liberal in exercising their discretion to award attorney fees to discourage any potential judicial oppression." *Bustos v. Gilroy*, 106 N.M. 808, 812, 751 P.2d 188, 192 (Ct.App.1988).

{11} Second, Rule 1–054(E) NMRA instructs parties to make a motion for attorney fees. In the domestic relations area, Rule 1–127 NMRA provides that:

> A motion for attorney fees pursuant to Rule 1–054 NMRA shall include an itemization of time expended and an affirmation

that the fees claimed are correctly stated and necessary. In awarding fees, the court shall consider relevant factors presented by the parties, including but not limited to:

A. disparity of the parties' resources, including assets and incomes;

B. prior settlement offers;

C. the total amount of fees and costs expended by each party, the amount paid from community property funds, any balances due and any interim advance of funds ordered by the court; and

D. success on the merits.

Rules 1–054(E) and –127 appear to implement Section 40–4–7(A) and the cases decided under it. *See, e.g., Gilmore v. Gilmore,* 106 N.M. 788, 792, 750 P.2d 1114, 1118 (Ct. App.1988).

{12} Third, the district court may issue sanctions, including attorney fees, when a party files a pleading or motion without information and belief that there is good ground to support it or if it is interposed for delay or otherwise litigates in bad faith. Rule 1–011 NMRA; *see State ex rel. State Highway & Transp. Dep't v. Baca,* 120 N.M. 1, 4–5, 896 P.2d 1148, 1151–52 (1995); *Rivera v. Brazos Lodge Corp.,* 111 N.M. 670, 675–76, 808 P.2d 955, 960–61 (1991). In New Mexico, contrary to Wife's argument, the courts' inherent powers are limited to these situations of bad faith, and courts have statutory powers, rather than inherent powers, to award attorney fees in divorce cases. *See N.M. Right to Choose/NARAL v. Johnson,* 1999–NMSC–028, ¶ 9, 127 N.M. 654, 986 P.2d 450; *Seipert v. Johnson,* 2003–NMCA–119, ¶¶ 9–10, 134 N.M. 394, 77 P.3d 298.

## 1. Jurisdiction to Consider California Attorney Fees

■ {13} Wife argues that the district court should have considered whether to order Husband to pay her California attorney fees. The district court refused to consider the California fees because it did not believe that jurisdiction was proper. We review the legal issue of whether the court had jurisdiction de novo. *See Weddington v. Weddington,* 2004–NMCA–034, ¶ 13, 135 N.M. 198, 86 P.3d 623 (involving subject matter jurisdiction).

■ {14} Under California law, a court with proper child custody jurisdiction cannot award attorney fees associated with the custody determination unless it also has personal jurisdiction over the party to be charged with fees. *In re Marriage of Malak,* 182 Cal.App.3d 1018, 227 Cal.Rptr. 841, 844–45 (1986). This mirrors the law of New Mexico. *See Worland v. Worland,* 89 N.M. 291, 296, 551 P.2d 981, 986 (1976). Furthermore, we are not aware of whether specific provisions in California's statutes might give a California court the power to order an individual over whom it does not have personal jurisdiction to pay attorney fees when said provisions are met. In any case, it appears that these provisions are not applicable in this case. *See* Cal. Fam.Code § 3427(e) (1999) (providing for attorney fees when it appears to the court that California was clearly an inconvenient forum); Cal. Fam.Code § 3428(c) (1999) (providing for attorney fees when California declines jurisdiction due to the improper conduct of one of the parties).

{15} Thus, the district court was incorrect to conclude that it should not consider California attorney fees on the ground that proper jurisdiction to determine attorney fees in the custody case was in California. With personal jurisdiction over both Wife and Husband and subject matter jurisdiction over the division of their property, the New Mexico court is the proper forum for the issue.

■ {16} To the extent that Wife argues that the award of her California attorney fees is mandatory under the New Mexico child custody statutes, we disagree. The costs section of the current statute on child custody jurisdiction mandates that attorney fees shall be awarded to the prevailing party unless such an award would be "clearly inappropriate." NMSA 1978, § 40–10A–312(a) (2001). Moreover, a transitional provision states, "A motion or other request for relief made in a child-custody proceeding . . . is governed by the law in effect at the time the motion or other request was made." NMSA 1978, § 40–10A–403 (2001). However, although New Mexico now follows the Uniform Child–Custody Jurisdiction and Enforcement

Act (UCCJEA), NMSA 1978, §§ 40–10A–101 to–403 (2001), the child custody law governing this case is the now-repealed Child Custody Jurisdiction Act (CCJA), NMSA 1978, §§ 40–10–1 to –24 (1981, repealed 2001), as this case was filed in 2000. *See* N.M. Const. art. IV, § 34 (providing that no legislation may affect a pending case). Thus, Wife's arguments pertaining to the application of the UCCJEA to this case are not valid. Furthermore, we also reject Wife's argument that the UCCJEA suggests legislative intent to require attorney fees be paid to the prevailing party in a child custody dispute, and that we should apply this intent to this case. We will not require a result to be accomplished indirectly when the result would be constitutionally impermissible directly. *Cf. Padilla v. State Farm Mut. Auto. Ins. Co.,* 2003–NMSC–011, ¶ 12, 133 N.M. 661, 68 P.3d 901 (holding that an insurer will not be allowed to do indirectly what it is precluded from doing directly).

{17} Wife's California attorney fees are also not mandatorily assigned to Husband under the CCJA. Section 40–10–8(G) states that when the forum selected by one of the parties in a child custody dispute is clearly inconvenient, the court may make the party who commenced the action pay the other party's attorney fees. This section gives the district court discretion to award attorney fees, but does not make it mandatory. *See Montano v. Los Alamos County,* 1996–NMCA–108, ¶ 5, 122 N.M. 454, 926 P.2d 307 (setting out the canon of statutory construction that the term "may" in a statute is permissive, while "shall" is mandatory). In addition, this provision would not apply to Wife's fees in this case because it only applies to cases in which child custody jurisdiction was decided on inconvenient forum grounds. Here, the California court ultimately decided jurisdiction as a matter of law.

{18} Therefore, we hold that the district court had jurisdiction to consider an award of attorney fees for the California litigation under Section 40–4–7(A) and the Rule 1–127 guidelines set forth above. Wife argues that under these circumstances, we must remand to the district court for it to exercise the discretion that it apparently believed that it did not have. *See Sandoval v. Chrysler Corp.,* 1998–NMCA–085, ¶ 12, 125 N.M. 292, 960 P.2d 834 (stating that the "failure of the trial judge to exercise his discretion is, in itself, reversible error"). However, there is nothing in the record indicating that the district court would have exercised its discretion to make an award of attorney fees for the California litigation. To the contrary, as will be demonstrated later in this opinion, the district court exercised its discretion, which discretion we uphold, to require the parties to bear their own attorney fees. Nonetheless, as error was committed, we remand on this issue for the district court's consideration, in the exercise of its reasoned discretion, of whether to award attorney fees to Wife in connection with the California custody matter. However, nothing in this opinion is intended to require the district court to hold a hearing unless it, in its discretion, chooses to consider an award of the California attorney fees.

## 2. Child Custody Attorney Fee Debt as Community Debt

{19} Wife next argues that all of her attorney fee debt arising from the New Mexico custody dispute should have been labeled as community debt. The threshold question of whether an item is community or separate debt is a legal issue that we review de novo. *Arnold v. Arnold,* 2003–NMCA–114, ¶ 6, 134 N.M. 381, 77 P.3d 285.

{20} Community debt is defined as "a debt contracted or incurred by either or both spouses during marriage which is not a separate debt." NMSA 1978, § 40–3–9(B) (1983). Separate debt does not include all debts incurred while separated, but does include "unreasonable" debt. Section 40–3–9(A). Unreasonable debt is debt that is acquired by one spouse while living apart that does "not contribute to the benefit of both spouses or their dependents." NMSA 1978, § 40–3–10.1 (1983). Thus, it appears that the district court's basis for classifying attorney fees as separate debt must have been a determination that both parties' attorney fees were "unreasonable debt," although the district court made no such explicit finding.

{21} We have held that a wife's attorney fee debt incurred in a child custody dispute and while she was living apart from her husband was community debt because it benefitted the community's dependents. *Bustos,* 106 N.M. at 810–11, 751 P.2d at 190–91. In that case, the attorney fees were due to an out-of-state attorney. *Id.* at 811, 751 P.2d at 191. There was also a finding that it was in the best interest of the children to reside with the wife, which was the outcome of the work by the attorney whose fees were held to be community debt. *Id.*

{22} The present case differs significantly from *Bustos.* Here, the child custody dispute actually took place in a different jurisdiction, and it appears that much of the fees were incurred in a dispute over jurisdiction. The district court made no findings with respect to the best interests of Child or the role of the child custody litigation in meeting Child's needs. Therefore, Wife's success on the merits of the jurisdictional issue in the California case is not dispositive of the issue before us, nor is the fact that she was awarded primary custody of Child.

{23} In addition, the special master made findings, adopted by the district court, that the parties' total attorney fees approached $600,000, which exceeded the value of the community estate, much of which was unnecessary and was due to conduct of which the court disapproved. In addition, provision was made, early in the case, for tens of thousands of dollars to be paid to Wife for her attorney fees. Under these circumstances, we believe that the district court could reasonably have ruled that the remainder of Wife's attorney fees, while stipulated to be reasonable in amount for the work done, was unreasonably incurred and therefore would not be considered community debt. *See Gonzales v. Lopez,* 2002–NMCA–086, ¶ 27, 132 N.M. 558, 52 P.3d 418 (indicating that appellate court will not second guess district court's weighing of evidence).

### 3. Husband's Discovery on Wife's California Attorney Fees

{24} Husband argues that the trial court erred in failing to afford him an opportunity to engage in discovery related to Wife's Cali-

fornia attorney fees. Given that the district court had decided that it could not hear the matter of Wife's California attorney fees, the ruling was appropriate. Husband alleges that he wanted to engage in discovery for the purpose of requesting an award of fees from Wife. However, we are upholding the district court's decisions on attorney fees, and Husband has not raised an issue alleging error in the failure to award him fees. Moreover, based on the ruling we are upholding, it is clear that no amount of discovery would lead the district court to shift Husband's attorney fees, that were already disproportional to Wife's in the California litigation, to Wife.

### 4. Wife's New Mexico Attorney Fees

{25} Wife argues that the district court should have awarded her attorney fees in its discretionary capacity because of the economic disparity between the parties, because she was successful on the merits of the child custody jurisdictional issue, because the final property division gave her more than her initial settlement offer, and because Husband used community funds to pay his attorney fees. The trial court's decision on whether to award attorney fees under its Rule 1–127 or Section 40–4–7(A) authority is reviewed for an abuse of discretion. *Bustos,* 106 N.M. at 812, 751 P.2d at 192. "An abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." *Sims v. Sims,* 1996–NMSC–078, ¶ 65, 122 N.M. 618, 930 P.2d 153. "When there exist reasons both supporting and detracting from a trial court decision, there is no abuse of discretion." *Talley v. Talley,* 115 N.M. 89, 92, 847 P.2d 323, 326 (Ct.App.1993).

{26} Reviewing the Rule 1–127 factors, the considerations in Section 40–4–7(A), and the district court's findings, we hold that the trial court did not abuse its discretion in deciding not to award any additional fees. With regard to economic disparity, although there was some evidence of economic disparity, substantial evidence, when considering all of the appropriate factors, supported the district court's denial of additional fees. Wife was imputed with income of $5,000 per month, and received a total estate of

$320,491. This was significantly less than Husband's estate, and this factor weighed in Wife's favor.

{27} However, we review the district court's decision bearing in mind all of the factors it was required to consider. *See Fitzsimmons v. Fitzsimmons,* 104 N.M. 420, 429, 722 P.2d 671, 680 (Ct.App.1986) ("While it would appear that husband's income was more than twice that of the wife, financial disparity in terms of wages is only one factor which the court may consider."). The special master's report states that any economic disparity did not prevent either side from making its case. The voluminous record bears this out, indicating that Wife made frequent motions to the court, fully briefed responses to all of Husband's motions, and made regular appearances before the court. We disagree that the failure to award attorney fees left Wife an unfair choice between capitulating to Husband's "superior economic resources" or incurring tremendous legal debt. The record indicates that Husband did not file a disproportionate share of the motions or raise a disproportionate share of the issues in the case.

{28} With regard to the other factors, the record supports the district court findings. Wife and Husband each made a series of settlement offers, none of which was accepted, such that this factor did not weigh heavily for either party. Both parties expended vast sums in litigating the case. Although Wife indicates that Husband paid his attorney fees from community funds, it also appears that some of her attorney fees were paid with community funds. Finally, as is evident from the appeal and cross-appeal, the district court correctly found that neither party had been completely successful on the merits.

### 5. Husband's Partial Payment of Wife's New Mexico Attorney Fees

{29} In June 2001, the district court ordered Husband to pay Wife $50,000 to equalize the costs of litigation. Wife received $34,902.39 from Husband to this end. On cross-appeal, Husband argues that the district court should have reimbursed him for his contribution to Wife's attorney fees because Wife made unreasonable demands and forced him to litigate them, because Wife refused reasonable settlement offers, because there was no economic disparity to support the award, and because Wife was unsuccessful on the merits. Again reviewing for abuse of discretion, we disagree.

{30} We begin by noting that the district court did not make this award pursuant to any of its attorney fee-related powers. When it made the June award of money for Wife's attorney fees, the district court based it on the principle that attorney debt acquired during marriage is community property unless there is evidence to the contrary and that the court had the authority to provide for community funds to be used to satisfy such debt. The district court expressly stated that it was not looking at the attorney fees "as anything other than debt." It then stated that when viewing New Mexico attorney fee debt, Wife was "already $50,000 down," meaning that Wife had spent about $10,000 while Husband had spent $60,000, and that the only way to equalize that debt was to award Wife $50,000. It also restated that the court was not considering factors like the reasonableness of the attorney fees in that allocation. Finally, the court asked the parties to draw up an interim order dividing income and bills.

{31} The district court had the authority to make this allocation as part of its power to make an interim order allocating community expenses. Rule 1–122 NMRA. Rule 1–122(A) states that community expenses "shall be equally divided between the parties." We hold that the district court did not abuse its discretion by allocating the community debt in this fashion, which equalized the community debt of attorney fees.

{32} Furthermore, we affirm the district court's decision not to credit Husband later for the amount he paid to Wife pursuant to this order. "In apportioning a husband and wife's assets and liabilities, the trial court must attempt to perform an allocation that is fair under all the circumstances." *Fernandez v. Fernandez,* 111 N.M. 442, 444, 806 P.2d 582, 584 (Ct.App. 1991). The district court had attempted to

equalize the allocation of debt in a manner that was fair at the time, and it was not an abuse of discretion to leave that ruling undisturbed.

{33} The other issues raised by this case will be decided in a memorandum opinion.

## CONCLUSION

{34} We affirm the district court's determinations regarding attorney fees, but remand to allow it to reconsider its decision regarding the California litigation should it choose to do so. We order that the parties shall bear their own attorney fees on appeal.

{35} **IT IS SO ORDERED.**

WE CONCUR: JONATHAN B. SUTIN and IRA ROBINSON, Judges.