This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**FRANCES TORRES,**

Petitioner-Appellee,

v.                                                            **NO. 30,400**

**JOSEPH TORRES,**

Respondent-Appellant.

**APPEAL FROM THE DISTRICT COURT OF TAOS COUNTY**
**Shari A. Raphaelson, District Judge**

Law Office of Jane B. Yohalem
Jane B. Yohalem
Santa Fe, NM

Brigitte U. Lotze Law Office
Brigitte U. Lotze
Taos, NM

for Appellee

L. Helen Bennett
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**VANZI, Judge.**

This appeal arises out of an action for the dissolution of marriage, the division of property, and the determination of custody and support. Joseph Torres (Husband) appeals the district court's final order in which it awarded Frances Torres (Wife) a residential property in exchange for awarding Husband other assets of equal value. Husband essentially raises two issues on appeal: (1) he contends that the district court's allocation of the parties' assets was inequitable and not based on substantial evidence because the assets awarded to Husband were nonexistent, and (2) he appeals the district court's order requiring him to pay a portion of Wife's attorney fees. We affirm on both issues.

**BACKGROUND**

Husband and Wife were married in 1996. Wife filed a petition for dissolution of marriage in October 2003. Wife requested the division and allocation of the parties' property and debts. In order to assess and allocate the parties' assets and debts, the district court appointed two experts. The experts' conclusions were presented to the district court at a nine-day bench trial presided over by then district court judge Timothy L. Garcia. Judge Garcia entered findings of fact and conclusions of law in which he divided the parties' community and separate assets and liabilities. Judge Garcia also ordered Husband to pay a portion of Wife's attorney fees. Both

parties filed motions for reconsideration. In particular, Wife requested that the district court reallocate to her a residence at 829 Hill Drive in Taos, New Mexico (Hill Drive), that had been allocated to Husband. Husband requested that the district court reconsider the award of attorney fees to Wife.

Judge Garcia held a hearing on the motions for reconsideration. Judge Garcia stated that he intended to reallocate Hill Drive to Wife provided that Wife had assets of equal value to exchange. The district court did not rule on the reallocation of Hill Drive at the hearing. Instead, Judge Garcia awaited the valuation of Husband's retirement fund to determine whether Wife had sufficient assets to make the exchange.

On October 2, 2008, Judge Garcia entered amended and corrected findings of fact and conclusions of law. Judge Garcia found that Husband was obligated to pay the portion of Wife's attorney fees as deemed appropriate by the court after a future evidentiary hearing. Judge Garcia concluded that "upon the resolution of certain remaining matters pending before the [c]ourt, the parties shall submit a [f]inal [o]rder and [d]ecree effectuating the immediate division of all the parties['] various separate and community assets, properties[,] or debts consistent with" his ruling. Before resolving the pending matters, Judge Garcia was appointed to the New Mexico Court of Appeals.

The Torres case was re-assigned to district court judge Sheri A. Raphaelson. Judge Raphaelson ordered the reallocation of Hill Drive to Wife in exchange for certain community assets and the release of Husband from debts owed to Wife. Judge Raphaelson also ordered Husband to pay Wife's attorney fees. Husband appealed. We first address whether the district court erred when it reallocated some of Wife's community assets in exchange for Hill Drive. We then turn to whether the district court's award of attorney fees to Wife was proper.

**DISCUSSION**

**The District Court Did Not Err in Reallocating the Parties' Assets**

We review the district court's division of community property for an abuse of discretion. *Arnold v. Arnold*, 2003-NMCA-114, ¶ 6, 134 N.M. 381, 77 P.3d 285. Under New Mexico law, the district court is required to equally divide the community property between divorcing parties. *Irwin v. Irwin*, 1996-NMCA-007, ¶ 10, 121 N.M. 266, 910 P.2d 342. However, "there is no requirement that each party receive exactly the same dollar value as long as the community property is equally apportioned by a method of division best suited under the circumstances." *Ridgway v. Ridgway*, 94 N.M. 345, 346, 610 P.2d 749, 750 (1980); *see also Irwin*, 1996-NMCA-007, ¶ 10 ("The division of property, however, need not be computed with mathematical exactness."). "Proper apportionment of community property and debts depends on

4

what is fair, considering all of the evidence with reference to the facts and circumstances of each case." *Foutz v. Foutz*, 110 N.M. 642, 644, 798 P.2d 592, 594 (Ct. App. 1990); *see also Bursum v. Bursum*, 2004-NMCA-133, ¶ 32, 136 N.M. 584, 102 P.3d 651 ("In apportioning a husband and wife's assets and liabilities, the [district] court must attempt to perform an allocation that is fair under all the circumstances." (internal quotation marks and citation omitted)); NMSA 1978, § 40-4-7(B)(4) (1997) ("On final hearing, the court . . . may make such an order . . . with reference to the control of the property of the respective parties . . . as may seem just and proper.").

In deciding to reallocate Hill Drive to Wife, Judge Raphaelson relied on Judge Garcia's findings and conclusions. She determined that Judge Garcia had awarded Wife sufficient assets that could be transferred to Husband in exchange for awarding Hill Drive to Wife. Specifically, she identified Wife's share of a community lien imposed on Husband's real property on Torres Road and Wife's share of a community lien imposed on Husband's herd of cattle and then reallocated those interests to Husband.

Husband argues that the district court's allocation of Hill Drive to Wife in exchange in part for the allocation of her interest in the community liens was in error because, he claims, those assets were not available to Wife. Husband makes two

arguments in support of this assertion. He contends that Wife's interest in the community liens was extinguished because the community's debt exceeded the value of its assets. He also argues that the community liens had already been allocated to him as his separate property so as to extinguish Wife's interest in the liens. On these bases, Husband asserts that the district court's allocation of assets was inequitable and not based on substantial evidence. For the following reasons, we disagree. We address Husband's arguments in turn.

In reviewing Husband's challenge to the sufficiency of the evidence, "we view the evidence in the light most favorable to the finding and judgment entered below." *Jurado v. Jurado*, 119 N.M. 522, 526, 892 P.2d 969, 973 (Ct. App. 1995). "This Court indulges in all reasonable inferences that can be drawn from the evidence in support of the judgment[,]" which must be upheld if substantial evidence exists to support it. *Id.* On appeal, Husband has the duty of setting out the evidence in the light most favorable to the findings and the judgment below and then demonstrating why that evidence fails to support the judgment. *See id.* In reallocating Hill Drive to Wife, Judge Raphaelson relied on Judge Garcia's findings and conclusions to determine in part what assets were available to Wife. Husband solely offers Judge Garcia's findings of fact and conclusions of law as evidence that the community liens

6

were not assets available to Wife to support his contention that Judge Raphaelson's reallocation was not supported by substantial evidence.

**1.      Wife Had Sufficient Assets to Exchange for Hill Drive**

We first address Husband's argument that Wife's interest in the community liens was extinguished because the community's debt exceeded its assets. We conclude that Husband's argument fails for two reasons. First, we note that Husband recognizes that Judge Garcia equitably divided the parties' community assets and debts in accordance with New Mexico law. However, Husband fails to acknowledge that Judge Garcia left open the final calculation of the allocation of community assets pending the valuation of the community's interest in Husband's retirement account. Neither party cites to the final order in which the district court values Husband's retirement account and resolves the allocation of community property. We therefore provide a brief account of Judge Garcia's allocation of the community's assets and debts and include the value of the community's interest in Husband's retirement account to demonstrate why Husband's argument fails on this point.

Based on the information Judge Garcia had at the time, he found that the community's assets totaled $463,203 plus the community's interest in Husband's retirement account that had yet to be calculated. Judge Garcia allocated Husband's

7

community assets valued at $241,996.50 and allocated $221,206.50 worth of assets to Wife. This distribution was in accordance with New Mexico law. *Irwin,* 1996-NMCA-007, ¶ 10 (stating that the equal distribution of community assets need not be exact). Judge Garcia then allocated the community debts between the parties. He largely allocated each party the community debt associated with the community or separate property allocated to him or her. Judge Garcia allocated $438,454 in community liabilities to Husband. This left Husband with negative net community assets. Judge Garcia allocated $151,556 in community liabilities to Wife leaving her with net community assets totaling $69,650.50.

After an evidentiary hearing on the valuation of Husband's retirement account, Judge Raphaelson subsequently determined the community property portion of Husband's retirement account was $219,142. She divided that amount equally, awarding each party $109,571. Recalculating Judge Garcia's allocation of community assets to Wife to include her half interest in Husband's retirement account, Judge Raphaelson awarded Wife total community assets of $330,777.50 and net community assets of $179,221.50. Even if we were to assume that the allocation of community debt somehow canceled out the value of the assets allocated to Wife, Wife still had net community assets in excess of the amount needed in exchange for Hill Drive. Therefore, based on Judge Garcia's unchallenged allocation of the community's

assets, we conclude that Husband's contention that Wife had insufficient assets because her community liens were extinguished by the community debt is without support in the record.

Second, we understand that Judge Raphaelson made a value-for-value exchange of assets in order to avoid disturbing Judge Garcia's equitable distribution of community assets and debts. At the hearing on Wife's motion, Judge Garcia stated he intended to make this value-to-value exchange provided Wife could show that she had sufficient assets to do so. Judge Raphaelson later did so. By exchanging Wife's interest in the community liens for the same amount of value in Hill Drive, Judge Raphaelson merely swapped assets of equal value.

Under the facts of this case, the amount of community debt allocated to either party did not extinguish the community assets also allocated to them. This is evident when looking at Judge Garcia's findings as a whole. For instance, Husband was awarded the community's truck valued at $18,095. The total amount of community debt allocated to him far exceeded the value of the truck. However, there is no order requiring the parties to satisfy the community's creditors using the community estate or evidence that the community assets had already been expended. *See* NMSA 1978, § 40-3-11(A) (1995); *cf. Irwin*, 1996-NMCA-007, ¶¶ 13-14 (holding that the court erred in the division of community property because it included assets that had already

been used to pay down community debts and were therefore no longer available as community assets). Therefore, though the community debt for which Husband was responsible exceeded the value of the assets allocated to him, he still retained the truck and its value as his asset. We do not see why Wife's interest in the community liens would be treated any differently. Even had the debt allocated to Wife exceeded the portion of the community assets allocated to her, we see no error in the district court making a value-for-value reallocation of the assets. Wife both retained these assets and was responsible for her portion of the community debt.

**2. Judge Garcia Did Not Allocate the Community Liens to Husband**

Husband also argues that the community liens were not available to Wife because Judge Garcia had allocated the full value of the community liens as his separate property. We disagree. Turning to Judge Garcia's findings of facts and conclusions of law, it is clear that he found that, at the time the parties separated, Torres Road and the herd of cattle were Husband's "separate property assets, subject to potential community liens[.]" Judge Garcia also found that these separate assets appreciated due to community effort during the marriage. As a result, Judge Garcia recognized a community lien of $218,000 on Torres Road and $42,000 on the herd of cattle. *See Jurado*, 119 N.M. at 526, 892 P.2d at 973 ("The community is entitled to a lien against the separate property of a spouse for the enhanced value of such

10

property attributable to community labor during the marriage."). Each spouse received a half interest in each community lien so that Wife was allocated a $109,000 community lien on Torres Road and a $21,000 community lien on the herd of cattle. Judge Garcia also allocated the total value of the community liens to Husband as his separate liability on the Torres Road property and the cattle herd that remained his separate property.

Husband interprets Judge Garcia's findings and conclusions as allocating the full value of the community liens to him so as to extinguish Wife's interest in the liens. Without providing us with citation to the record or to supporting authorities, Husband asserts that Judge Garcia made this allocation in order to offset the amount of community debt allocated to Husband. Contrary to Husband's interpretation of the findings, Judge Garcia allocated the full amount of each lien to Husband as his separate *liability*. This allocation of liability does not represent an award of the value of the community liens to Husband as his separate assets. Nor does this allocation of liability extinguish Wife's interest in the liens. Rather, the allocation represents the imposition of the community liens on Husband's separate property for the amount of the increase in the value of that property that was owed to the community. *See id.*; *Smith v. Smith*, 114 N.M. 276, 282, 837 P.2d 869, 875 (Ct. App. 1992) (holding that the district court properly imposed a lien against the separate property of the husband

11

for the amount the district court determined the property had increased in value due to community effort and that the wife was entitled to one-half of that lien).

Other than Judge Garcia's findings, Husband does not direct us to anywhere in the record to support his assertion that the value of the community liens was allocated to him. Judge Raphaelson relied on Judge Garcia's findings and incorporated them into her final order. Judge Garcia's division and allocation of the community's assets and liabilities is clear, as is his allocation of the parties' separate property. Therefore, to the extent Husband argues that the evidence shows that Judge Garcia extinguished Wife's interest in the community liens by allocating them to Husband, we conclude this argument is without merit. *Pacheco v. Quintana*, 105 N.M. 139, 141-42, 730 P.2d 1, 3-4 (Ct. App. 1985) (holding that where a judgment is unambiguous "[i]t must stand and be enforced as it speaks"). We hold that the district court did not err in determining that Wife's assets included her half interest in the community liens imposed on Husband's separate property. Accordingly, the district court did not err in relying on these liens to find that Wife had sufficient assets to exchange with Husband for Hill Drive.

**3. Judge Raphaelson Properly Considered Wife's Motion for Reallocation of Hill Drive**

Husband contends that Judge Raphaelson should have been bound by Judge Garcia's prior allocation of the parties' assets and liabilities. At the last hearing over

12

which Judge Garcia presided, he stated that he intended to reallocate Hill Drive to Wife if she could show that she had sufficient assets to make the value-for-value exchange. At the close of the hearing, Judge Garcia indicated that he awaited the valuation of Husband's retirement account to make this determination. In his amended and corrected findings of fact and conclusions of law, Judge Garcia plainly stated that there were pending matters that required resolution before the district court could enter a final order and decree dividing the parties' property. At the hearing on the motion before Judge Raphaelson, Husband insisted that Judge Garcia had denied Wife's motion. However, Judge Raphaelson agreed with Wife's counsel that Judge Garcia had left her a "laundry list" of issues that had not yet been resolved. Wife's motion for the reallocation of Hill Drive was included on that list. Judge Raphaelson also noted that there was no order in the record disposing of Wife's motion. Additionally, we note that the purpose of the hearing was specifically to deal with the property issues left open by Judge Garcia's findings and conclusions. Therefore, to the extent Husband argues that, as a successor, Judge Raphaelson was bound by Judge Garcia's previous ruling on Wife's motion, there is no ruling to have bound Judge Raphaelson. *See Nelson v. Homier Distrib. Co.*, 2009-NMCA-125, ¶ 27, 147 N.M. 318, 222 P.3d 690 (holding that while "[t]he general rule is that a successor judge cannot review, modify, or reverse on the merits and on the same facts the final orders

of a predecessor," where further proceedings are required to dispose of the issues, the order of a predecessor judge is not final and a second judge is not bound by the findings of the first (internal quotation marks and citation omitted)).

Husband raises two other arguments on this issue. He contends that Judge Raphaelson should have been bound by all of Judge Garcia's findings and conclusions under the law of the case doctrine. Husband urges us to develop new rules regarding the finality of orders in domestic relations cases. Husband does not point us to where in the record he preserved his law of the case argument, and we conclude that the issues were not preserved. *Sandoval v. Baker Hughes Oilfield Operations, Inc.*, 2009-NMCA-095, ¶ 56, 146 N.M. 853, 215 P.3d 791 ("In order to preserve an issue for appeal, [the appellant] must have made a timely and specific objection that apprised the district court of the nature of the claimed error and that allows the district court to make an intelligent ruling thereon.").

**Award of Attorney Fees to Wife Was Not an Abuse of Discretion**

Lastly, Husband contends that the district erred in awarding attorney fees to Wife. The bases for Husband's argument appear to be that he believes the district court awarded Wife attorney fees in order to punish him and that the award was improper because he had prevailed on some issues. "We review a [district] court's decision whether to award attorney fees in a martial dissolution and property division

case for abuse of discretion." *Muse v. Muse*, 2009-NMCA-003, ¶ 71, 145 N.M. 451, 200 P.3d 104; *Garcia v. Jeantette*, 2004-NMCA-004, ¶ 15, 134 N.M. 776, 82 P.3d 947 ("The decision whether to grant or deny a request for attorney fees rests within the sound discretion of the district court.").

Under Section 40-4-7(A), the district court is authorized to "make an order, relative to the expenses of the proceeding, as will ensure either party an efficient preparation and presentation of his [or her] case." *Bursum*, 2004-NMCA-133, ¶ 10 (alteration in original) (internal quotation marks and citation omitted). Rule 1-127 NMRA implements Section 40-4-7(A). *Bursum*, 2004-NMCA-133, ¶ 11. Rule 1-127 requires that in awarding attorney fees,

> the court shall consider relevant factors presented by the parties, including but not limited to:
>     A.    disparity of the parties' resources, including assets and incomes;
>     B.    prior settlement offers;
>     C.    the total amount of fees and costs expended by each party, the amount paid from community property funds, any balances due and any interim advance of funds ordered by the court; and
>     D.    success on the merits.

Pursuant to Rule 1-127 the district court ordered Husband to pay Wife's attorney fees. After an evidentiary hearing, the district court made extensive findings of fact addressing each of the factors set out in Rule 1-127. The district court found that although Husband had made settlement offers, these offers did not include

proposals to settle several issues that ultimately were resolved by the court. The district court also found that Wife prevailed on these issues and was ultimately awarded more than offered by Husband on other issues.

Additionally, the district court found an economic disparity between the parties and that Husband had been able to pay his nearly $195,000 in attorney fees. As this Court has recognized, a showing of economic disparity between the parties, particularly when one party has the ability to pay their attorney fees while the other does not "has been characterized as the primary test" for determining whether to award attorney fees to a party. *Quintana v. Eddins*, 2002-NMCA-008, ¶ 33, 131 N.M. 435, 38 P.3d 203. Husband concedes that there was economic disparity between the parties. *See Gonzales v. Lopez*, 2002-NMCA-086, ¶ 17, 132 N.M. 558, 52 P.3d 418 (stating that this Court accepts the unchallenged findings of the district court); *cf. Bustos v. Gilroy*, 106 N.M. 808, 811, 751 P.2d 188, 191 (Ct. App. 1988) ("A finding of fact . . . will not be upheld on appeal unless it can be sustained by the evidence or inferences made therefrom."). However, Husband contends in his reply brief that although Judge Garcia's allocation of separate property left Husband with net separate assets totaling $2,715,135, Judge Raphaelson's finding that Husband's separate assets were $2,715,135 was unsupported by the record. He does not argue that this amount is actually incorrect. He only contends that, for various reasons, he does not have

access to actual cash flow from those assets and, therefore, they should be disregarded. Husband does not develop this argument or provide us with authority in support of it. New Mexico law allows district court's to consider a party's access to resources, and this is not limited to their actual income or cash holdings. *See Monsanto v. Monsanto*, 119 N.M. 678, 683, 894 P.2d 1034, 1039 (Ct. App. 1995) (holding that substantial evidence supported an award of attorney fees to the wife where the district court found an economic disparity between the parties based on financial resources available to the husband, including his access to assets that were not his own and his ability to pay his attorney fees throughout the litigation). Judge Raphaelson considered all of Husband's separate assets identified by Judge Garcia to determine that there was a vast economic disparity between Husband and Wife; therefore, Judge Raphaelson's finding is supported by the record.

On appeal, Husband has the burden of "demonstrat[ing] through discussion of facts, arguments, and rulings appearing in the record how the district court abused its discretion." *Muse*, 2009-NMCA-003, ¶ 72. Husband has failed to meet this burden. Husband does not direct us to the rulings on which he prevailed or to authority supporting his contention that because he prevailed on some issues the award of attorney fees to Wife was error. Husband provides no support for his assertion that the award of attorney fees was imposed as a punishment on him or provide legal

17

authority showing that, even if this were so, it would be error. "Husband's arguments are surface presentations only. We will not search the record for facts, arguments, and rulings in order to support generalized arguments." *Id.* The district court entered findings of fact that set out the bases for its ultimate conclusion ordering Husband to pay Wife's attorney fees. Absent the showing of error, and given the broad discretionary authority of the district court to assess the expenses of domestic relations litigation, we affirm the district court's award of attorney fees to Wife.

**1.    Attorney Fees for Appeal**

Wife requests this Court award her attorney fees on appeal. We grant that request and remand on this limited issue for the district court to determine what portion of Wife's attorney fees should reasonably be awarded to her.

**CONCLUSION**

We conclude that the district court did not err in its exchange of the parties' assets or by awarding Wife attorney fees. We affirm the final order of the district court and remand on the limited issue of determining what portion of Wife's attorney fees to award for this appeal.

**IT IS SO ORDERED.**

_____

**LINDA M. VANZI, Judge**

18

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**JONATHAN B. SUTIN, Judge**