2003-NMCA-114

77 P.3d 285

**Pamela Jean ARNOLD, Petitioner–Appellee,**

v.

**Richard Neel ARNOLD, Respondent–Appellant.**

**No. 22,765.**

Court of Appeals of New Mexico.

July 14, 2003.

382

John R. Westerman, Law Offices of John R. Westerman, Chartered, Farmington, NM, for Appellee.

Hannah E. Smith, Titus & Murphy, Farmington, NM, for Appellant.

## OPINION

SUTIN, Judge.

{1} Richard Neel Arnold (Husband) appeals the district court's final decree on dissolution of marriage awarding Pamela Jean Arnold (Wife) one-half of Husband's accrued vacation and sick leave benefits. Husband contends that his accrued vacation and sick leave hours are not community property. If they are, Husband contends the district court

improperly calculated the sick leave hours and their value. We affirm.

## BACKGROUND

{2} The following findings of fact are unchallenged. They are, therefore conclusive on appeal. *State v. Werner*, 110 N.M. 389, 390, 796 P.2d 610, 611 (Ct.App.1990); *see* Rule 12–213(A)(4) NMRA 2003 ("The argument must set forth a specific attack on any finding, or such finding shall be deemed conclusive."). Husband and Wife were married on March 4, 1972. Husband was an employee of New Mexico State University (NMSU) during the marriage. As a benefit of that employment, Husband accumulated vacation leave hours and sick leave hours that accrued monthly. The balance of accumulated vacation leave as of the final hearing on September 14, 2001, was approximately 296.35 hours and the balance of accumulated sick leave was approximately 812.35 hours. At Husband's then current earnings rate of $24 per hour, the value of Husband's total accumulated vacation leave was $7,112.40, and the value of Husband's total accumulated sick leave was $19,496.40, for a total value of $26,608.80. Husband used vacation leave and sick leave throughout each employment year to avoid forfeiting the hours. Husband had no plans to retire at any time prior to age sixty-two, which was about fourteen years from the final hearing. Husband was fully vested in all NMSU retirement benefits due to twenty-one years of employment and was eligible to receive full retirement benefits in 2004. Husband would use the 296.35 hours of accumulated vacation leave and the 812.35 hours of accumulated sick leave over the balance of his employment with NMSU, considering that the hours accumulated at the time of divorce should be the first hours used, rather than hours accumulated on a monthly basis after September 14, 2001. In the past, Husband used vacation leave hours and sick leave hours before they were forfeited. Even if Husband should not use up these accumulated hours of vacation leave and sick leave, upon his retirement or termination, he could be paid a substantial amount of these benefits in cash. It was reasonable to value these hours at Husband's present hourly rate of $24, rather than his pay rate when the hours were used, which the court presumed

would be a higher rate of pay because of Husband's increased seniority and pay increases. It was not unreasonable to delay the payment to Wife of half of this community asset to the date of Husband's actual termination, or age 62, whichever occurred first. Wife was entitled to a money judgment for $13,304.40, representing half the value of the accumulated vacation leave and sick leave as of September 14, 2001.

{3} Additional unchallenged findings are: Husband's motion to reconsider should be denied as no new evidence was presented, and should be denied and stricken because documentation submitted therewith, namely the NMSU Personnel and Benefits Policy Manual's Leave Policies (NMSU Policy Manual), was not furnished to opposing counsel with the motion, in violation of Rule 1–005(A) NMRA 2003 and LR 11–104(D). The NMSU Policy Manual was hearsay and had not been authenticated. Wife timely objected to the introduction of the NMSU Policy Manual into evidence.

{4} The district court ruled that Husband's accumulated vacation leave and sick leave were community property and awarded one-half of Husband's accumulated 296.35 hours of vacation leave and 812.35 hours of sick leave to Wife as her sole and separate property. The court granted judgment to Wife in the amount of $13,304.40, to be paid "on or before the payment of [Husband's] retirement benefits."

{5} On appeal, Husband asserts (1) his accumulated vacation leave and sick leave are not community property; and (2) if they are community property, the district court unfairly valued the vacation leave and sick leave by not taking into account NMSU's policy as contained in the NMSU Policy Manual.

## DISCUSSION

### Standard of Review

{6} Wife states that this Court should review the district court's decision for an abuse of discretion. Wife cites NMSA 1978, § 40–4–7 (1997), in regard to the district court's authority in making an equitable division of community property and debts. Wife also cites *Trego v. Scott,* 1998–NMCA–080, ¶ 22, 125 N.M. 323, 961 P.2d 168, which states that "[t]he trial court is to divide community property equally" and gives the court broad discretion in doing so. Wife's statement of the standard of review is correct, insofar as valuing and distributing community property is concerned. *See Ruggles v. Ruggles,* 114 N.M. 63, 67, 834 P.2d 940, 944 (Ct.App.1992), *rev'd on other grounds,* 116 N.M. 52, 860 P.2d 182 (1993) (leaving method of distribution and implementation of payment of retirement benefits at dissolution of marriage within the sound discretion of the district court). However, the threshold question of whether Husband's accumulated vacation leave and sick leave are community property is a question of law, which we review de novo. *See Styka v. Styka,* 1999–NMCA–002, ¶ 8, 126 N.M. 515, 972 P.2d 16; *see also Ruggles,* 114 N.M. at 64, 834 P.2d at 941 (suggesting that issue in a dissolution of marriage of whether spouse should pay one-half of pension benefits to be received if retirement was immediate presents a question of law).

### Husband's Unused Vacation Leave and Sick Leave Are Community Property

{7} It does not appear that any clear consensus has emerged on the issue of whether a party's unused vacation leave and sick leave are community property. *See generally* 3 Elizabeth Williams, *Marital Property Law* § 46:01 (rev.2d ed.2002); 2 Gary N. Skoloff et al., *Valuation and Distribution of Marital Property* § 23.04A (2002). The New Mexico statutes provide no clear answer. We must therefore attempt to ascertain the legislative intent underlying the Community Property Act of 1973, NMSA 1978, §§ 40–3–6 to –17 (1973, as amended through 1997). *See TPL, Inc. v. N.M. Taxation & Revenue Dep't,* 2003–NMSC–007, ¶ 24, 133 N.M. 447, 64 P.3d 474 ("In interpreting a statute ... we search for and effectuate the legislative intent—the purpose or object—underlying the statute." (internal quotation marks and citation omitted)).

{8} Community property is broadly defined as "property acquired by either or both spouses during marriage which is not separate property." § 40–3–8(B). "Property acquired during marriage by either husband or

wife, or both, is presumed to be community property." § 40-3-12(A). Underlying this presumption is an understanding that the fruit of a spouse's labor during marriage is community property. *See Irwin v. Irwin,* 121 N.M. 266, 269, 910 P.2d 342, 345 (Ct.App. 1995); *DeTevis v. Aragon,* 104 N.M. 793, 798, 727 P.2d 558, 563 (Ct.App.1986). Our courts have recognized a variety of employment benefits acquired during marriage to be community property subject to division upon divorce. *See Walentowski v. Walentowski,* 100 N.M. 484, 487, 672 P.2d 657, 660 (1983) (military retirement pay); *Ridgway v. Ridgway,* 94 N.M. 345, 347, 610 P.2d 749, 751 (1980) (vested, unmatured interest in a non-contributory profit sharing plan); *Copeland v. Copeland,* 91 N.M. 409, 412, 575 P.2d 99, 102 (1978) (vested, unmatured pension benefits); *Garcia v. Mayer,* 1996–NMCA–061, ¶ 17, 122 N.M. 57, 920 P.2d 522 (unvested stock options that provided husband with a valuable right in a contingent benefit); *Berry v. Meadows,* 103 N.M. 761, 767–68, 713 P.2d 1017, 1023–24 (Ct.App.1986) (contingent interest in a nonvested, unmatured retirement benefit).

{9} In *Copeland,* the pension benefits at issue were vested because they could not be forfeited if the husband terminated his employment prior to retirement, but they were not matured because the husband was not entitled to the benefits until he met the age-eligibility requirement. 91 N.M. at 412, 575 P.2d at 102. The Supreme Court reasoned that because the husband's rights in the pension were "a valuable asset built up by 24 years of community effort," allowing the husband to take the pension as separate property would produce a "potentially whimsical result [that] cannot be reconciled with the fundamental principle that property attributable to community earnings must be divided equally when the community is dissolved." *Id.* at 411, 575 P.2d at 101 (internal quotation marks and citation omitted).

■ {10} In *Berry,* this Court addressed the question left unanswered by *Copeland:* whether a contingent interest in a nonvested, unmatured retirement benefit earned during the marriage is subject to division upon dissolution of the marriage. *Berry,* 103 N.M. at

766, 713 P.2d at 1022. This particular retirement benefit would only vest if the husband continued working for the company six more years. *Id.* The court concluded:

> A spouse's entitlement to half of the community interest in a pension plan earned during coverture does not rest upon whether the employee's interest was vested at the time of divorce, but whether the worker's rights in the pension constitute a property interest or right obtained with community funds or labor. While rights to benefits under the retirement plan may never vest or mature due to contingencies and unforeseeable occurrences, wife was, nevertheless, entitled to have her portion of the contingent interest computed and divided.

*Id.* at 767–68, 713 P.2d at 1023–24 (citation omitted). Thus, even nonvested and unmatured retirement benefits that are conditioned upon a spouse's continued employment for a stated period of time, if earned during coverture, constitute community property subject to division.

{11} Our characterization of employment benefits as community property has not, however, been limited to the context of retirement benefits. In *Garcia,* we examined whether the community had an interest in unvested stock options. 1996–NMCA–061, ¶¶ 12–16, 122 N.M. 57, 920 P.2d 522. In that case, the husband had entered into a non-qualified stock option agreement whereby he was provided with the option to purchase 12,500 shares of stock in installments. *Id.* ¶ 2. At the time of the divorce, the husband's right to purchase only 2500 of the shares of stock had vested. *Id.* ¶ 3. One day after the entry of the decree, as a result of a merger, the option to purchase the remaining shares vested. *Id.* ¶ 4. Although we recognized that the husband had no right to exercise any of the unvested options at the time of the divorce decree, *id.* ¶ 13, we nonetheless classified the unvested stock options as community property "to the extent that the ultimate vested rights were earned by Husband's labor during marriage" because the stock option agreement produced "a valuable right in a contingent benefit." *Id.* ¶ 15 (internal quotation marks omitted).

{12} Husband acknowledges that, under *Garcia* and *Berry*, "[e]ven unvested, contingent retirement and stock option benefits that have no value at the time of divorce are community property." He has not contested, and he implicitly acknowledges, that the accrual of the hours and the right to later use or obtain compensation for those hours existed at the time of divorce, were earned by Husband's labor and effort during the marriage, and were vested at the time of divorce. He contends, however, that his accumulated, unused vacation leave and sick leave are not analogous to retirement or pension benefits, or stock option benefits, and do not, therefore, constitute community property.

{13} Husband argues that "[t]he unused hours are meant to compensate [him] for working more hours than he was expected to work during his career." For the most part in conclusory assertions, Husband argues that (1) the post-divorce right stemming from the accrual of the hours to use those hours, is "not meant as a financial asset" insofar as the right is exercised by use of the hours; and (2) the right to be compensated for the hours at the end of employment will likely result in little value, if any, because most, if not all, of the hours will be used. He argues that the accumulated hours are to be distinguished from retirement, pension, and stock option benefits in that the latter consist of "valuable financial assets" and "meaningful interests" that will produce "future financial profit," whereas the right to use or to receive payment for the accumulated hours is little more than a " 'fringe benefit' used to lure potential employees or keep current employees." Finally, Husband argues that the accumulated hours are nothing more than a right to future salary. We do not find Husband's arguments persuasive.

{14} Husband cites general propositions from *Garcia* and *Berry*, but does not, and, indeed, cannot, support his arguments with those cases. Husband cites no cases outside New Mexico to support his arguments. Raised in his reply brief only, Husband argues by analogy to the medical license in *Muckleroy v. Muckleroy*, 84 N.M. 14, 15, 498 P.2d 1357, 1358 (1972), that the accumulated hours are not subject to joint ownership and cannot be used by Wife. In *Muckleroy*, our Supreme Court held that, for the purposes of New Mexico's community property laws, a medical license was not community property as it was not subject to community ownership. *Id. Muckleroy* does not help Husband. In *Mitchell v. Mitchell*, 104 N.M. 205, 209, 719 P.2d 432, 436 (Ct.App.1986), we held that "[a]lthough the individual right to practice a profession is a property right that cannot be classed as a community property, the value of the practice as a business at the time of dissolution ... is community property." In the present case, Wife does not seek Husband's vacation leave or sick leave days. Husband still has full use of all the accumulated leave. Rather, Wife seeks the reasonable value of the accumulated hours earned as a result of community effort and labor.

{15} We note, even though never raised or asserted by Husband, some jurisdictions have precluded accumulated vacation leave and sick leave from being distributed upon divorce because of the difficulty in valuation of the benefits. *See Thomasian v. Thomasian*, 79 Md.App. 188, 556 A.2d 675, 681 (Ct.Spec.App.1989) (concluding accrued holiday and vacation entitlement to be "far from as tangible as, and much more difficult to value, not to mention more personal than, a pension or retirement benefits" and not marital property because "it may be, and often is, dissipated when the person entitled to do so, takes vacation or holiday time"); *Bratcher v. Bratcher*, 26 S.W.3d 797, 800–01 (Ky.Ct.App. 2000) (adopting Maryland's approach on the issue of vacation leave and sick leave as set out in *Thomasian* ); *see also Akers v. Akers*, 729 N.E.2d 1029, 1033 (Ind.Ct.App.2000) (holding that spouse's "accumulation of unused sick days had no present value, was contingent and speculative in nature, and thus not capable of division as a marital asset" (internal quotation marks omitted)). We are not persuaded by these cases. *Garcia* and *Berry* rejected the notion that a contingent right to a future benefit eliminates an asset as community property. *Garcia*, 1996–NMCA–061, ¶ 15, 122 N.M. 57, 920 P.2d 522; *Berry*, 103 N.M. at 767–68, 713 P.2d at 1023–24. Well-reasoned cases from other jurisdictions have determined that such interests fall within marital ownership. *See*

*Grund v. Grund,* 151 Misc.2d 852, 573 N.Y.S.2d 840, 844 (N.Y.Sup.Ct.1991) (recognizing that although spouse's vacation leave and sick leave are "property which is indefeasible but contingent on the employee not using up the sick and vacation time before actual retirement," since the benefits exist as property and were acquired during coverture, they are subject to equitable distribution upon divorce); *Lesko v. Lesko,* 184 Mich. App. 395, 457 N.W.2d 695, 699 (1990) (balancing the possibility that the spouse may become ill and not retain sick days until retirement against the right to use or be paid for those days to which a value may be assigned and concluding the days were a divisible marital asset), *overruled on other grounds by Booth v. Booth,* 194 Mich.App. 284, 486 N.W.2d 116, 119 (1992).

■ {16} Furthermore, we are not prone to sever such interests after they have been earned by Husband's labor and accrued during marriage, despite the fact that, if they are used by Husband post-divorce, the paid leave does not, at that time, benefit the community. The essence of leave is that it is a benefit of employment and, whether considered a benefit in addition to salary, or somehow an aspect of salary, it has independent value. If taken during marriage, leave time devoted to vacation or to recovery from illness benefits the community. If not taken, leave that accumulates will be available to benefit the community in the future. If the community ends, the accumulated leave attaches to the employee. Unless some equitable distribution is made or the asset is divided upon dissolution of marriage, the employee takes the full community asset and benefit. We see no policy reason or persuasive rationale why the employee, Husband in the case before us, should end up with the full value of the community asset or why the leave assets should not be divided.

■ {17} We hold the Husband's contractual benefit earned with his labor and effort during marriage merits no different treatment than retirement, pension, or unvested stock options earned during marriage as a result of the expenditure of community labor. *Accord Schober v. Schober,* 692 P.2d 267, 268

(Alaska 1984) (holding that the right to compensation for unused leave is "akin to pension or retirement benefits, another form of deferred compensation" and, as such, is subject to division upon divorce (internal quotation marks and citation omitted)); *Brotman v. Brotman,* 528 So.2d 550, 551 (Fla.Dist.Ct. App.1988) (concluding district court erred in holding that the husband's earned vacation pay was not subject to equitable distribution because the asset was "acquired by the parties during their marriage from their work efforts, services, and earnings" (internal quotation marks and citation omitted)); *Ryan v. Ryan,* 261 N.J.Super. 689, 619 A.2d 692, 696 (Ct. Ch. Div.1992) (concluding that the husband's accrued vacation pay earned during coverture, "during which time the wife contributed to his success in his career," was subject to equitable division because it represented a form of deferred compensation); *Grund,* 573 N.Y.S.2d at 843 (equating accrued sick leave and vacation leave to pension benefits as they "clearly are contract rights received in lieu of higher compensation which would otherwise have enhanced either marital assets or the marital standard of living"); *Nuss v. Nuss,* 65 Wash.App. 334, 828 P.2d 627, 632 (1992) (upholding district court's characterization of sick leave as an asset subject to distribution based on similarities to vacation leave and retirement benefits, which court concluded were "deferred compensation for past services, and thus the portion of those benefits accrued during marriage is community property"). We therefore conclude that the district court properly determined Husband's unused vacation leave and unused sick leave to be community property and divisible upon divorce.

### Valuation of the Benefits

{18} The district court determined all of the accumulated hours at the time of divorce to be subject to division and valuation, and valued them all at Husband's then current hourly rate of $24. Husband attacks this valuation as unfair and incorrect because it is not in accordance with the NMSU Policy Manual. Husband asserts that the NMSU Policy Manual grants a right to compensation for vacation leave based on a limit of 240 hours,

and for unused sick leave "at a rate of 50 percent of the employee's straight-time hourly salary multiplied by the number of sick leave hours accrued over 600 to a maximum of 200."

{19} More specifically, Husband argues that the district court's valuation of the total unused compensable hours at $26,608.80 was significantly more than Husband would have been entitled to receive under the NMSU Policy Manual, even assuming that Husband would not have used any of the hours and would have been paid the maximums at the time he concluded his employment. Husband computes the correct amount to be $8,160, computed by multiplying 240 vacation leave hours by $24 and 200 sick leave hours by $12.

{20} The district court found that Husband had accumulated 296.35 hours of vacation leave and 812.35 hours of sick leave. The court determined the value of these hours to be $24 per hour, based on Husband's then current hourly wage. The court made no reference to the NMSU Policy Manual as a basis for any of its findings of fact, conclusions of law, or decree in regard to the valuation of the hours. To the contrary, in one finding of fact, the court determined that a motion by Husband for reconsideration should be "denied and stricken because documentation submitted therewith, namely the [NMSU] Policy Manual's Leave Policies was NOT furnished to opposing counsel with the Motion, in violation of [Rule] 1–005(A) and LR11–104(D)." In other findings, the court determined that the NMSU Policy Manual was hearsay and had not been authenticated, and that Wife timely objected to its introduction into evidence.

{21} Husband did not testify at trial as to what the NMSU Policy Manual stated, nor did he offer it into evidence. Husband does not contend that the court's exclusion of the NMSU Policy Manual from consideration on the motion for reconsideration was error. Husband refers to the NMSU Policy Manual in one requested finding of fact: after stating that he filed a motion for reconsideration before the court entered its final decree, Husband requested a court finding that, at the hearing on Husband's motion for recon-

sideration, "the court allowed [Husband] to submit the [NMSU] Policy Manual's Leave Policies into evidence and then denied [Husband's] Motion without hearing oral argument." This requested finding was not correct and was properly rejected by the court. In his requested conclusions of law, Husband cites the NMSU Policy Manual in support of his statements of what the policy purportedly stated. Husband nowhere refers to the foregoing requested finding or requested conclusion in his appellate briefs. Husband nowhere points out either in his requested findings or his briefs on appeal whether the NMSU Policy Manual was ever offered or introduced into evidence at trial as an exhibit.

{22} Furthermore, Husband nowhere in his appellate briefs attacks the district court's finding that Husband's motion for reconsideration should be denied and stricken because the NMSU Policy Manual was not furnished to opposing counsel pursuant to applicable procedural rules, or the finding that the NMSU Policy Manual was hearsay and had not been authenticated. Rather, Husband charges ahead as though the district court admitted the NMSU Policy Manual arguing the provisions of the manual. Incredibly, Husband nowhere in his appellate briefs even mentions any of the district court's findings of fact and conclusions of law with any specificity. See Rule 12–213(A)(4) NMRA 2003 (requiring appellant to set forth in the brief in chief a specific attack on any finding, or the finding is deemed conclusive). Nor does Husband claim on appeal that the district court erred in failing to adopt any of his requested findings of fact or conclusions of law.

{23} While the record does reflect through Husband's testimony and other discussion at trial, that, at retirement, Husband was entitled to a maximum of 240 vacation leave hours and was entitled to be compensated at half his hourly wage for all accumulated sick leave hours over 600 to a maximum of 200, the district court obviously rejected this as a basis on which to limit the leave hours to be considered. On a principle similar to the first-in, first-out accounting principle, the court found that all of Husband's accumulat-

388

ed leave hours would be used over the balance of his NMSU employment. The court further found that it was reasonable to value these "used" hours at $24 each, instead of at the rate he would be compensated for unused hours at retirement. These findings are not attacked. The court's method of determining that the hours would be consumed during employment and have a value of $24 is rationally based. Husband's assertions might permit a possible alternative disposition, but they are not by reason or law required to be accepted, and they obviously are not ones the district court chose to accept in arriving at the hours and their valuation.

{24} Husband seems almost resigned to lose his argument, since with respect to the arguable issues of what hours to value and how to value the hours, he spends but one page on the issues in his brief in chief, no more than one page on the issues in his reply brief, and nowhere attacks or even discusses any of the court's findings of fact or ruling excluding the NMSU Policy Manual from evidence. We hold the district court did not abuse its discretion or otherwise err in its determinations of the accumulated vacation leave and sick leave to be valued and its valuation of each.

### Attorney Fees

{25} Wife, in her answer brief, requests attorney fees of $1850 for the services of her appellate counsel. We award Wife $925 in attorney fees. The briefs in this case were not particularly helpful to the Court.

## CONCLUSION

{26} We affirm.

{27} **IT IS SO ORDERED.**

WE CONCUR: IRA ROBINSON and RODERICK T. KENNEDY, Judges.