This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**GREGORY SCHARRER,**

  Petitioner-Appellee,

v.               **No. 29,485**

**ROSANNA SCHARRER,**

  Respondent-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Elizabeth E. Whitefield, District Judge**

Gregory Scharrer
Albuquerque, NM

Pro Se Appellee

John V. Nilan, LLC
John V. Nilan
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**VIGIL, Judge.**

Respondent appeals from the final judgment styled "Findings of Fact and Conclusions of Law and Order" dissolving her marriage to Petitioner, dividing the parties' assets and debts, and awarding spousal support. [RP 474; 489] In this Court's notice of proposed summary disposition, we proposed to reverse the district court's offset to the value of a property owned by the parties and to affirm in all other respects. Respondent and Petitioner have each timely filed memoranda in response to our notice. We have considered the parties' arguments, and as we are not persuaded that our proposed summary disposition should be reconsidered, we reverse in part and affirm in part.

**Offset to the Value of the Oklahoma Property**

Respondent contends that the district court erred by awarding Petitioner an offset to the value of the property in Stillwater, Oklahoma, in the amount of $11,400, reducing the value of Respondent's interest in the community asset. [DS 9] We review the district court's decisions in making an equitable division of community property and debts for an abuse of discretion. *See Arnold v. Arnold*, 2003-NMCA-114, ¶ 6, 134 N.M. 381, 77 P.3d 285 ("[T]he trial court is to divide community property equally and [we give] the court broad discretion in doing so." (internal quotation marks and citation omitted)). "An abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." *Sims v. Sims*, 1996-NMSC-078, ¶ 65, 122 N.M. 618, 930

2

P.2d 153.

In this Court's notice of proposed summary disposition we proposed to hold that this offset against the value of the property by a cost of sale assumed to be 8% of the current value of the home was contrary to logic where there was no evidence presented that the parties intended to sell the property. We relied on representations in Respondent's docketing statement that no such evidence was presented.

In Petitioner's memorandum in opposition to our proposed summary disposition, he states that he testified at trial that the home was not intended to be a second home for the parties and that it was intended to be used by their daughter while she was in college. [Pet'r's MIO 3] He therefore asserts that the district court could reasonably have concluded that the parties intended to sell the home when their daughter finished college. We disagree. While this evidence may have been sufficient to demonstrate that the parties never intended to live in the home themselves, it is not sufficient to indicate that the parties intended to sell it at any particular time (rather than, for example, continuing to own it as a rental property) or that the cost of the sale, in the event that they did sell it, would be 8% of the present value of the property. Accordingly, we conclude that the district court erred in offsetting the value of the property based on speculation that the home might eventually be sold and that the sale would cost 8% of the present value of the home.

**The SLFCU Visa Credit Card Debt**

Respondent asserts that the district court erred by assigning the debt on the SLFCU Visa credit card #4962 in the amount of $3,000 to Respondent as part of her

portion of the community debt instead of assigning the debt to Petitioner as unpaid obligation of interim support as his sole and separate debt. [DS 9] Respondent's argument challenges the sufficiency of the evidence to support the district court's finding that the debt was community debt. "[W]hen considering a claim of insufficiency of the evidence, the appellate court resolves all disputes of facts in favor of the successful party and indulges all reasonable inferences in support of the prevailing party." *Las Cruces Prof'l Fire Fighters v. City of Las Cruces*, 1997-NMCA-044, ¶ 12, 123 N.M. 329, 940 P.2d 177. "The question is not whether substantial evidence exists to support the opposite result, but rather whether such evidence supports the result reached." *Id.* "Additionally we will not reweigh the evidence nor substitute our judgment for that of the fact finder." *Id.* "[W]hen there is a conflict in the testimony, we defer to the trier of fact." *Buckingham v. Ryan*, 1998-NMCA-012, ¶ 10, 124 N.M. 498, 953 P.2d 33.

Respondent's docketing statement included very little information in support of this argument: Respondent represented that both parties testified that, by court order, for the purpose of equalizing income, Petitioner was to pay Respondent's interim expenses charged to the SLFCU Visa credit card. [DS 3] Respondent stated that by the time of trial Petitioner failed to pay the $3,000 balance on the credit card. Respondent argued that the district court erroneously refused to characterize the credit card balance as the separate debt of Petitioner, and instead found it to be community debt attributed to Respondent's portion of the community's debt. [RP 475; DS 3]

In our notice of proposed summary disposition, we stated that the record proper

4

did not support Respondent's representation of the facts or her claim of error. We noted that the record indicates that interim support was a contested issue below, and that the district court initially ordered that Petitioner open a bank account and deposit $3,160 monthly as interim support, and to pay the bills listed on the worksheet. [RP 26, 235-36, 363-64, 376-77] We stated that we could find no order of the district court indicating that Respondent must use the SLFCU Visa credit card for interim expenses. [RP 26, 182, 206, 235-36] We noted that the district court's final order states that both parties testified that the SLFCU Visa credit card balance is community debt, and the court found it to be so. [RP 477 (fof 18)] Accordingly, we proposed to hold that the district court did not err by requiring that this community obligation be paid with community funds. *See, e.g.*, *Mitchell v. Mitchell*, 104 N.M. 205, 215, 719 P.2d 432, 442 (Ct. App. 1986) (affirming the district court's allocation of debt in which it reduced the community estate by the community obligations paid by husband with community funds).

In response, Respondent's memorandum proposes an interpretation of the district court's first order regarding interim support and provides additional facts that she hopes will persuade us of the district court's error. Respondent's argument suggests that the October 11, 2006, minute order regarding interim support required Petitioner to pay Respondent half of his income and all of Respondent's bills, including her utilities. [Resp't's MIO 1; RP 26-30 (minute order); RP 455 (Respondent's Proposed Finding #17, asserting that the Visa charges were for her utilities and were therefore the separate debt of Petitioner under the October 11, 2006,

5

minute order)] However, this is not what the order says. The order says that Petitioner must pay Respondent the monthly lump sum, "and will pay all bills on the worksheet." [RP 26] On the attached worksheet, the amount listed for Respondent's utilities is $0. [RP 29] Therefore, it does not appear that the order requires Petitioner to pay Respondent's utility bills. The order also lists a $78 payment on a Visa credit card. [Id.] Assuming that this is the credit card with the $3,000 debt that Respondent believes Petitioner should be responsible for paying, we cannot conclude that the order is intended to mean that Petitioner will give Respondent $3,160 per month and pay any and all charges that Respondent made on the credit card on top of that amount. Such an interpretation would place no limits on the amounts that Petitioner would be required to give Respondent and would therefore be unreasonable. Accordingly, we do not see how this initial interim order required Petitioner to pay Respondent's utility bills, either directly or as charged to the Visa. Furthermore, when the interim order was later modified, the hearing officer's recommendation was that Petitioner would pay Respondent $2,805 and the parties would pay their own monthly expenses. [RP 178-82 (hearing officer' s recommendations), 206 (district court's order denying the parties' objections to the recommendations)] Therefore, we do not believe that Respondent has demonstrated that Petitioner was actually obligated to pay her utility bills under either the original interim order or under its later modification. The district court could have properly concluded that Petitioner was not separately obligated to pay the $3,000 that Respondent asserted was for her utilities.

Even if the minute order of October 11, 2006, should be interpreted in the way

6

that Respondent claims, such that Petitioner was required to pay Respondent a monthly lump sum plus Respondent's utility bills, Respondent's description of the evidence introduced at trial does not demonstrate that the district court erred in concluding that Respondent failed to prove that the $3,000 balance on the credit card was attributable to utility bills for which Petitioner was responsible. Respondent's memorandum in response to this Court's notice indicates that the evidence was conflicting about the source of the $3,000 debt. Petitioner apparently testified at one point that the debt was community debt and then, at another point, that it was debt for Respondent's utilities. [Resp't's MIO 2] Respondent testified that the charges were interim expenses that she believed Petitioner was responsible for paying, but also testified that she had made other charges on the card. [Resp't's MIO 2] Respondent does not state that she introduced any documentary evidence or bills that would demonstrate what the $3,000 debt was for, and it appears that the district court could have concluded that Respondent failed to demonstrate that the $3,000 debt was attributable to her utilities, as opposed to other charges she made. Although Respondent testified that she had fully reimbursed Petitioner for the other charges she made on the card [Resp't's MIO 2], the district court was free to disbelieve this testimony or find the other testimony more credible. *See Ranchers Exploration & Dev. Corp. v. Miles*, 102 N.M. 387, 390, 696 P.2d 475, 478 (1985) ("It is up to the jury to weigh the testimony, determine the credibility of witnesses, reconcile inconsistent or contradictory evidence, and say where the truth lies."). Finally, Respondent does not indicate that her testimony established that these debts were

incurred while the October 11, 2006 order was in effect, rather than its amendment, which expressly states that both parties will be responsible for their own monthly expenses.

Respondent indicates that she attempted to introduce an exhibit, called Exhibit 28, in relation to her arguments regarding the $3,000, but as she does not inform this Court what this exhibit was and does not explain why the district court "objected to" it, it does not form any basis for relief on appeal. *See State v. Chamberlain*, 109 N.M. 173, 176, 783 P.2d 483, 486 (Ct. App. 1989) (refusing to grant relief where the defendant's memorandum in opposition to our proposed summary disposition failed to provide this Court with a summary of all the facts material to our consideration of the issue raised in the docketing statement); *see also Hennessy v. Duryea*, 1998-NMCA-036, ¶ 24, 124 N.M. 754, 955 P.2d 683 ("Our courts have repeatedly held that, in summary calendar cases, the burden is on the party opposing the proposed disposition to clearly point out errors in fact or law.").

Respondent states that she has nothing to say with regard to our proposed summary disposition of these issues. [Resp't's MIO 2] Respondent's failure to make any argument in response to this Court's proposed summary resolution of those issues constitutes an acceptance of our disposition as to them. *See Id.*; *cf. Frick v. Veazey*, 116 N.M. 246, 247, 861 P.2d 287, 288 (Ct. App. 1993) ("Failure to file a memorandum in opposition constitutes acceptance of the disposition proposed in the calendar notice.").

Therefore, for the reasons stated in this opinion and the notice of proposed

summary disposition, we reverse the offset to the value of the Oklahoma property, and affirm in all other respects.

**IT IS SO ORDERED.**

_____
**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

_____
**ROBERT E. ROBLES, Judge**

_____
**TIMOTHY L. GARCIA, Judge**