This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**BERNARD GARCIA,**

Petitioner-Appellant,

v.                                                                      **NO. 32,916**

**JODEANE R. GARCIA,**

Respondent-Appellee.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Sylvia F. LaMar, District Judge**

Mary Jo Snyder
Santa Fe, NM

for Appellant

Jodeane R. Garcia
Santa Fe, NM

Pro Se Appellee

**MEMORANDUM OPINION**

**WECHSLER, Judge.**

{1}    Petitioner Bernard Garcia (Husband) appeals from the district court's order denying him certain relief in connection with the division of property and allocation of debts with Respondent Jodeane R. Garcia (Wife) and order denying his motion for reconsideration. On appeal, Husband contends that the district court erred by (1) failing to require Wife to reimburse Husband for an increase in mortgage payments caused by Wife's recurring late or non-payments; (2) failing to require Wife to pay "all or a major portion" of the balance of the second mortgage due to her actions or inactions resulting in the sale of the community residence below its appraised value; and (3) deciding that Wife was not obligated for rental payments for her occupancy of the community residence during and after the divorce proceedings. We affirm.

**BACKGROUND**

{2}    In the course of the dissolution of marriage proceeding, the parties entered into a marital settlement agreement (MSA) on August 3, 2011 to resolve the issues between them. On August 4, 2011, the court adopted the MSA as part of its final bifurcated decree of dissolution of marriage and distribution of assets and debts. The MSA acknowledged that the parties shared an equal community interest in their former community residence, the Mesa Vista property. They agreed to place the Mesa Vista property for sale, that Wife would continue to reside on the property pending sale, and that Wife would make certain floor treatments at her expense. As to the two

2

mortgages on the property with Los Alamos National Bank (LANB), the parties agreed that Husband would continue to pay the first mortgage and that Wife, as consideration for her residing at the property, would pay the second mortgage. As to property expenses, the parties agreed (1) that Wife would "keep the property in good, clean and 'showable' condition for sale purposes at all times" and (2) that "[a]ny exceptional or major repairs or required maintenance (e.g., furnace, roof, etc.) shall first be discussed and agreed upon by the parties, and any resulting agreed-upon costs shall then be equally divided between the parties."

{3}    On July 30, 2012, Husband filed an emergency motion for immediate permission to accept sales offer/make counter-offers, and sell the residential property. Wife, then a self-represented litigant, did not file a timely response. The district court found, on August 17, 2012, that the Mesa Vista property had been on the market for more than two years without any offers; that Wife had "failed to keep the property on the market for sale, in good and clean condition, making it available to realtors, while living in it rent-free[.]" The court further found that the property "had to be pulled off the market due to non-access and poor condition"; that Wife had "consistently failed to timely or fully pay the [second] mortgage, and is currently seriously in default"; that "the value and condition of the property have fallen considerably" since Wife declined to exercise her option to purchase the property; and that Wife has indicated

that she would not cooperate in the sale of the property. The district court ordered that Husband be granted a limited power of attorney in order to complete a sale of the property and to reduce or eliminate possible deficiencies. It required Husband to prepare an accounting and reserved decision of Husband's request for "offset[s]" pending the outcome of the sale of the property.

{4}     The district court held a hearing on the "offsets" on March 11, 2013. Husband and Joe Sabo, the parties' realtor, testified similarly to the district court's August 17, 2012 findings. More specifically, as stated in the court's March 13, 2013 order, Wife insisted upon a higher offering price than an appraisal before the parties agreed in the MSA to reduce the price over 45-day intervals; that the house was "in poor condition (dog feces, urine in home)" and the yard was unkept; and that the home was difficult to show because Wife required notice of showings. Husband testified that he hauled out trash, scheduled clean-up visits, and tried to arrange for the pets. Husband took possession of the property in July 2012, performed cleaning and repair, and placed it back on the market. An offer was received for $160,000, less than the original appraised value of $195,000 and less than the balances of the two mortgages. Wife refused to consider the offer or make a counter-offer, leading to Husband's filing of his emergency motion. The property sold on November 6, 2012 for $160,000. Wife testified that the property was always in disrepair and that she had reduced the

4

balance on the second mortgage to $33,000 before she lost her unempolyment benefits and could no longer make the payments.

{5}    The pay-off balance on the LANB second mortgage was $49,611.09. The net sales proceeds yielded $16,377.63 as payment toward the mortgage. Husband borrowed the balance, $33,233.46, from LANB to pay off the second mortgage. The loan included a finance charge of $12,171.54, for a total amount of $45,405.

{6}    Husband requested the district court to offset amounts he owed Wife under the division of their property by allocating to Wife the total amount of the promissory note he secured to pay off the second mortgage balance of $45,405. Husband also requested that he be awarded from Wife his share of bills for utilities and taxes that he paid in connection with the Mesa Vista property ($905.11), cleanup and dump fees also in connection with the Mesa Vista property ($850), one-half of the LANB appraisal fee ($253.23), attorney fees ($2500 minimum), rent for the Mesa Vista property ($7200), and excess mortgage payments that he made ($6840).

{7}    The district court entered its order on March 13, 2013. It awarded Husband $489.41 for utility bills, $850 for property cleanup and dump expenses, $253.23 for one-half of the appraisal, $22,702.50 for one-half of the promissory note, and $2,500 for attorney fees. As a result, the district court offset the $38,000 that Husband owed Wife with $26,795.14, leaving a balance due Wife of $11,204.86. The district court

5

further reduced this amount by $5,000 of the excess mortgage payments claimed by Husband, resulting in a net balance due Wife of $6204.86. Both parties filed motions for reconsideration, which the district court denied.

**THE SECOND MORTGAGE**

{8}     With respect to the increased balance on the second mortgage, Husband argues on appeal that the district court erred by failing to require Wife to bear the total increase because it resulted from Wife's recurring non-payment of the mortgage obligation. Husband makes two arguments: (1) that Wife should reimburse him $8188.81, one-half of the $16,377.63 of community funds received as sale proceeds paid to the LANB at closing on the second mortgage; and (2) that Wife "should pay all or a major portion" of the remaining deficiency on the second mortgage that was paid by a loan of $45,405 ($33,233.46 plus $12,171.54 interest).

{9}     The district court did not reimburse Husband any of the community funds received as sale proceeds and divided the obligation on the $45,405 loan equally between the parties. Husband argues that the district court abused its discretion and that he is entitled to reimbursement under the "hold harmless" provisions of the MSA.

{10}     The district court's March 13, 2013 order reflected the district court's final division of the parties' property and debts. The court acted under its broad discretion to make an equitable division of community property and debts. *See Arnold v. Arnold*,

6

2003-NMCA-114, ¶ 6, 134 N.M. 381, 77 P.3d 285 (reviewing district court's decision regarding valuation and distribution of community property for abuse of discretion). An abuse of discretion is a decision that is "clearly untenable or contrary to logic and reason." *State ex rel. King v. B & B Inv. Grp., Inc.*, 2014-NMSC-024, ¶ 28, 329 P.3d 658 (internal quotation marks and citation omitted). It may occur if the district court's findings are not supported by substantial evidence. *Atherton v. Gopin*, 2015-NMCA-___, ¶ 25, ___P.3d___ (No. 32,958, June 18, 2015). In reviewing for substantial evidence, we resolve all disputes and indulge all inferences in favor of the successful party and disregard all contrary inferences. *Lahr v. Lahr*, 1970-NMSC-165, ¶ 2, 82 N.M. 223, 478 P.2d 551.

{11} In entering into the MSA, the parties sought to resolve their differences, and the MSA became a binding obligation between them when it was approved by the court. *See Wolcott v. Wolcott*, 1984-NMCA-089, ¶ 16, 101 N.M. 665, 687 P.2d 100 ("A separation agreement is binding on the parties, but is subject to such action as the court, in its discretion, deems appropriate."). We therefore look to the MSA to determine if it addresses the issues that arose between the parties that are the subject of this appeal.

{12} Husband argues that the "hold harmless" provisions of the MSA require that Wife be responsible for the increase in the second mortgage payment that resulted

from her failure to make proper payments. Specifically, Husband refers to Clauses III.2.f., III.3.a., and VII.12. of the MSA.

{13}    Clause III.2.f. provides:

> In consideration for being allowed to continue to reside at Mesa Vista at this time without the payment of rent, Wife shall continue to pay the monthly [second] mortgage amount through LANB, utilities and any routine upkeep on the property. Wife shall keep the property in good, clean and "showable" condition for sale purposes at all times. Any exceptional or major repairs or required maintenance (e.g., furnace, roof, etc.) shall first be discussed and agreed upon by the parties, and any resulting agreed-upon costs shall then be equally divided between the parties.

{14}    Clause III.3.a. provides:

> Wife shall assume as her sole and separate obligation, pay in accordance with the terms thereof, and hold Husband safe and harmless from all debts in her name, including her credit cards; leases; medical bills; vehicle liens/loans; insurances; utilities and ordinary costs associated with Mesa Vista property; attorney's fees and costs and any other debts to which she obligated herself.

(Emphasis omitted.)

{15}    Clause VII.12. provides:

> In the event either party to this Marital Settlement Agreement defaults in his or her obligations hereunder, the party in default shall be liable to the other party for all reasonable expenses incurred, including attorneys' fees, in the enforcement of obligations created by this [MSA].

{16} The MSA allocated to Wife the obligation to pay LANB the monthly payments on the second mortgage. It also required Wife to pay utilities and routine upkeep and "keep the property in good, clean and 'showable' condition."

{17} We do not, however, read the MSA to include, as does Husband, a requirement that Wife hold Husband harmless with respect to the second mortgage balances. Clause III.2.f. of the MSA sets forth Wife's obligations to make the mortgage and utility payments and maintain the property, but it does not state any obligation for her failure to do so or include any hold harmless language. *See Espinosa v. United of Omaha Life Ins. Co.*, 2006-NMCA-075, ¶ 26, 139 N.M. 691, 137 P.3d 631 ("When a contract or agreement is unambiguous, we interpret the meaning of the document and the intent of the parties according to the clear language of the document, and we enforce the contract or agreement as written."); *cf. Herrera v. Herrera*, 1999-NMCA-034, ¶ 9, 126 N.M. 705, 974 P.2d 675 ("All [marital] settlement agreements are contracts and therefore are subject to contract law[.]"). While Clause III.3.a. does include hold harmless language, it pertains, as relevant to Husband's arguments, to payments for utilities and maintenance for the Mesa Vista property. In this regard, the district court found that Husband made payments for utilities, and property clean up and dump expenses, and it reimbursed Husband for his share of these payments.

9

{18} Clause VII.12. addresses a default in a party's obligations under the MSA and assigns liability to the defaulting party for the other party's expenses in enforcing the MSA. Thus, the defaulting party would be required to pay the other party's costs and attorney fees in bringing action to enforce the MSA. In this regard, the district court required Wife to pay Husband's attorney fees in the amount of $2500. However, Clause VII.12. of the MSA does not include any requirement concerning the manner in which a court dissolving a marriage should reallocate property or debt.

{19} After hearing the evidence, the district court determined that it would adjust the property and debt division by requiring Wife to reimburse Husband for his community share of utility bills, his payment of property cleanup and dump expenses, his community share of the property appraisal fee, and $2500 of his attorney fees. The district court granted Husband $5000 to balance his greater burden of paying the first mortgage payments. It further determined that the parties would share equally the debt obligation to pay off the second mortgage.

{20} In its order, the district court did not accept Husband's arguments that Wife should bear financial responsibility for her payment history on the second mortgage or failure to maintain the property. Indeed, there was evidence supporting Husband's arguments: the parties did not dispute in the district court that Wife did not regularly make the payments, and the district court found that the parties' real estate agent

10

testified that the asking price of the Mesa Vista property was too high because Wife refused to reduce the price, and that the property was difficult to show because of the notice Wife required and the property's condition. The parties also did not dispute that community funds of $16,377.63, the balance of the proceeds from the sale, were applied to partially pay the outstanding second mortgage; or that husband obtained a loan of $45,405 to pay the remaining balance on the second mortgage.

{21}     However, we cannot say that the district court abused its discretion. Although the evidence indicates that Wife did not fulfill aspects of her obligations under the MSA, the consequences of her actions are not clear, and the resulting financial impacts are speculative. *Cf. Lovington Cattle Feeders, Inc. v. Abbott Labs.*, 1982-NMSC-027, ¶ 26, 97 N.M. 564, 642 P.2d 167 (stating that "damages, to be recoverable, must be proven with reasonable certainty and not be based upon speculation") While the second mortgage balance likely increased due to Wife's failure to make regular payments, the district court did not have evidence before it demonstrating a specific financial impact. Similarly, there was no evidence identifying the financial effect of Wife's failure to cooperate in the sale of or her failure to maintain the property. The parties' real estate agent testified that if the property were kept up and repairs made, it could possibly have sold for its appraised value of $195,000, but that he would be "second guessing." He thought that the sales

11

price "would have come close" to covering the mortgage payments. A district court has broad discretion in equitably dividing community property and debts. *Arnold*, 2003-NMCA-114, ¶ 6. Based on the evidence before it, the district court did not abuse its discretion.

**RENT FOR OCCUPANCY OF THE MESA VISTA PROPERTY**

{22} Husband also argues that the district court abused its discretion by failing to award him rent for Wife's occupancy of the Mesa Vista property. The MSA allowed Wife to continue to reside at the property without rent in consideration for her paying the monthly payments on the second mortgage, utilities, and routine upkeep.

{23} Husband relies on *Hertz v. Hertz*, 1983-NMSC-004, 99 N.M. 320, 657 P.2d 1169, in support of his position. In *Hertz*, the wife had argued that the district court had abused its discretion in failing to assess an interest or rental value to the husband for the time that he resided in the community residence after the parties' divorce but before the final judgment was entered dividing the community assets. *Id.* ¶¶ 36-37. Our Supreme Court discussed that, for practical reasons, the common law right of co-tenants to occupy common property may not be applicable in circumstances of divorce. *Id.* ¶¶ 38-39. It explained that there may be a "constructive ouster, exclusion, or an equivalent act" that would give rise to a fair rate of return on the community interest of the non-possessing spouse. *Id.* ¶ 39. Our Supreme Court remanded to the

12

district court to determine whether there was a constructive ouster or exclusion, and, if so, to further determine an appropriate rental value. *Id.*

{24} In this case, after the district court entered its final decree, it reserved jurisdiction to address the distribution of the parties' real estate, including the Mesa Vista property, subject to its sale or transfer. As part of the MSA, the parties contemplated that the Mesa Vista property would be placed on the market for sale. They agreed that Wife would live at the property without rent in consideration for her paying the second mortgage and maintaining the property for its sale.

{25} Because of the MSA and the fact that the parties placed the property on the market for sale, this case is not like *Hertz* in which the husband had exclusive possession and control of the community residence for his own purposes. *Id.* ¶¶ 36-39. The parties herein agreed to sell the property and to have Wife live there to enable the sale. Wife stated that the property was always in disrepair and that she maintained the property as well as she could. The parties' daughter and grandson also lived at the property. Wife paid the second mortgage, reducing its balance to approximately $33,000, until she lost her unemployment benefits and did not have a job. Husband lived with his parents during this time.

{26} The district court, after hearing the evidence and argument of the parties, orally made its ruling that was incorporated into its March 13, 2013 order. It stated that the

13

parties were in the unfortunate position of having mortgages that exceeded the property value. The court denied Husband's request for rental reimbursement because the parties faced difficulties that were beyond their control, the MSA did not call for rental payments, and the court was not going to punish Wife for failing to keep up the property some time ago.

{27}    Given the circumstances that the parties faced, their decisions regarding the sale of the Mesa Vista property, the language of the MSA, and the overall purposes of the MSA to divide the parties' community property and debt, the district court did not abuse its discretion in denying Husband's request for rental payments. In exercising its discretion to equitably divide the parties' interests, the court could reasonably have determined that Wife was not obligated to pay rent on the Mesa Vista property for the period she lived there pending its sale and that she should not be punished for the condition of the property.

**CONCLUSION**

{28}    We affirm the district court's order.

{29}    **IT IS SO ORDERED.**


_____
**JAMES J. WECHSLER, Judge**

14

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____
**RODERICK T. KENNEDY, Judge**